BLAKE C. CLARK v. A. L. MEYLAND, CHAIRMAN GUILFORD COUNTY BOARD OF ELECTIONS; FRED M. UPCHURCH AND ARTHUR UTLEY, MEMBERS OF THE GUILFORD COUNTY BOARD OF ELECTIONS; AND MARGARET SCHECTER, SECRETARY OF THE GUILFORD COUNTY BOARD OF ELECTIONS.

(Filed 17 January 1964.)

**1. Elections §§ 2, 14—**

That part of G.S. 163-50 which requires an elector desiring to change his party affiliation to swear that he desires to make the change in good faith *held* constitutional and valid in having as its purpose the prevention of raids by one political party into the ranks of another in primary nominations, but the remainder of the statutory oath requiring the elector to swear or affirm that he will support the nominees of the party at that and in future elections until he should again change his affiliation, is void as preventing a voter from casting his ballot according to the dictates of his conscience. Art. I, § 10 of the Constitution of North Carolina.

**2. Statutes § 4—**

Where that part of a statute imposing an unconstitutional limitation is divisible from other parts of the statute, which are constitutional, the statute stands with the unconstitutional provision deleted.

APPEAL by plaintiff from *Shaw, J.,* September 9, 1963 Civil Session, GUILFORD Superior Court, Greensboro Division.

The plaintiff instituted this civil action to have the court determine by declaratory judgment his right to change his political party affiliation on the registration books of Guilford County Board of Elections without making oath "that I will support the nominees of the party to which I am now changing my affiliation in the next election and the said party nominees thereafter until I shall, in good faith, change my party affiliation in the manner provided by law." The plaintiff prayed for a writ of *mandamus* to compel the election officials to permit the requested change without requiring him to take the (to him) objectionable part of the loyalty oath above quoted.

The pleadings and stipulations establish the following: On and prior to October 3, 1962, plaintiff was a qualified and registered elector in Guilford County. He was registered as a Democrat. The defendants at all times pertinent to this inquiry held offices as stated in the caption. The plaintiff applied to the Secretary of the County Board of Elections for a change in party affiliation from "Democrat" to "Republican." He agreed to take the oath prescribed in G.S. 163-50, except the part above quoted, to which he objected upon the ground he did not know who the Republican nominees would be, their views on public questions at the time of the election, nor who the party candidates would be in future elections. Hence, in good conscience, he could

not swear that he would support them. He offered to take the oath if the objectionable clause were eliminated. The officials of the Board of Elections refused to permit the change without the full oath. The plaintiff exhausted all administrative remedies prior to the institution of this action, in which Judge Shaw entered the following:

> "2. The oath required by G.S. 163-50, does not abridge, modify or deprive any registered elector of any constitutional Rights, State or Federal, to which he is lawfully entitled.

> "IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the plaintiff's action be dismissed, the relief sought by the plaintiff be denied, and the costs of this action be taxed against the plaintiff.

> "This 18th day of September 1963.

> "/s/ Eugene G. Shaw, Judge Presiding."

*William L. Osteen, J. Halbert Conoly, Charles E. Dameron, Jordan J. Frassineti for plaintiff appellant.*

*Durwood S. Jones, for defendant appellees.*

*T. W. Bruton, Attorney General, James F. Bullock, Assistant Attorney General, Amicus Curiae.*

HIGGINS, J. In this case the plaintiff, a registered Democrat, sought to change his party affiliation and to qualify himself to vote in the Republican Primary. The election officials, as a condition precedent to the change, demanded that he take the oath prescribed by G.S. 163-50, as follows:

> "I, .........................., do solemnly swear (or affirm) that I desire in good faith to change my party affiliation from the............................. to the.............................party, and that such change of affiliation be made on the party registration books, *and I further solemnly swear (or affirm) that I will support the nominees of said party to which I am now changing my affiliation in the next election and the said party nominees thereafter until I shall, in good faith, change my party affiliation in the manner provided by law, so help me God."* (emphasis added).

The plaintiff refused to take that part of the oath above in italics. The election officials refused to make the requested transfer. The case presents this question: Did the General Assembly act within its competence in requiring, as a condition of the party transfer, that the plaintiff make oath in the manner set forth in the statute? The plain wording of the oath obligated the plaintiff to support the nominees of

the Republican Party "in the next general election and the said party nominees thereafter until I shall, in good faith, change my party affiliation in the manner provided by law." For additional emphasis to this *in futuro* commitment, the Legislature by G.S. 163-197, provided that any person shall be guilty of a felony who knowingly swears falsely with respect to any matter pertaining to any primary or election.

The true intent and purpose of the primary laws are stated in *States' Rights Democratic Party v. Board of Elections*, 229 N.C. 179, 49 S.E. 2d 379: "But they (primary laws) do not undertake to deprive the voter of complete liberty of conscience or conduct in the future in the event he rightly or wrongly comes to the conclusion subsequent to the primary that it is no longer desirable for him to support the candidates of the party in whose primary he has voted. Besides, the Legislature has expressly declared that nothing contained in the laws governing primary elections 'shall be construed to prevent any elector from casting at the general election a free and untrammeled ballot for the candidate or candidates of his choice.' G.S. 163-126." The court held illegal rules of the State Board of Elections disqualifying those registered to vote in the primary from filing a petition for a new party.

Many of the cases in other states hold that obligation to support the nominees of the primary imposes a moral obligation which is already implicit in the very act of taking part in the primary. "(T)he primary voter, with or without the statute, incurred a moral obligation binding on his honor." The court concluded that the obligation was no greater with than without the oath. "The voter's conduct must be determined largely by his own peculiar sense of propriety and of right. It is for such reasons that the courts do not undertake to compel performance of the obligation." *Westerman v. Mims*, 111 Tex. 29, 227 S.W. 178; *Ray v. Garner*, 257 Ala. 168, 57 S.E. 2d 824; *Chapman v. King*, 154 Fed. 2d 460 (5th Ct. denied), 327 U.S. 800; *State v. Michel*, 121 La. 374.

Without the binding commitment to support the "next" and the "thereafter" candidates of the party, the remaining parts of the oath would seem to furnish adequate means by which to determine good faith membership in the party and to prevent raids by one party into the ranks of the other in primary nominations. Any elector who offers sufficient proof of his intent, in good faith, to change his party affiliation cannot be required to bind himself by an oath, the violation of which, if not sufficient to brand him as a felon, would certainly be sufficient to operate as a deterrant to his exercising a free choice among available candidates at the election—even by casting a write-in ballot.

His membership in his party and his right to participate in its primary may not be denied because he refuses to take an oath to vote in a manner which violates the constitutional provision that elections shall be free. Article I, Sec. 10, Constitution of North Carolina.

When a member of either party desires to change his party affiliation, the good faith of the change is a proper subject of inquiry and challenge. Without the objectionable part of the oath, ample provision is made by which the officials may strike from the registration books the names of those who are not in good faith members of the party. The oath to support future candidates violates the principle of freedom of conscience. It denies a free ballot—one that is cast according to the dictates of the voter's judgment. We must hold that the Legislature is without power to shackle a voter's conscience by requiring the objectionable part of the oath as a price to pay for his right to participate in his party's primary.

The oath as prescribed by G.S. 163-50 is divisible. It stands, but with the objectionable part eliminated. *Banks v. Raleigh*, 220 N.C. 35, 16 S.E. 2d 413. And, as stated in *Starbuck v. Havelock*, 252 N.C. 176, 113 S.E. 2d 278, "We apply to this Act the law so frequently declared with respect to partially invalid legislative acts." Citing *Constantian v. Anson County*, 244 N.C. 221, 93 S.E. 2d 163; *Commissioners v. Boring*, 175 N.C. 105, 95 S.E. 43; *Smith v. Wilkins*, 164 N.C. 135, 80 S.E. 168.

No doubt, the authorities, upon a new application, will permit the plaintiff to change his party affiliation without requiring that part of the oath herein declared to be invalid.

The judgment of the Superior Court of Guilford County is
Reversed.