Luis A. Rivera Lacourt, Baldomero Freyre, and José Aulet, Petitioners, *v.* Commonwealth Board of Elections, Respondent; Puerto Rican Union Party, and Dr. Antonio J. González, Interveners.

No. 21.  Decided August 31, 1971.

1022

Luis A. Rivera Lacourt, pro se, Baldomero Freyre, pro se, and José Aulet, pro se, all members of the Commonwealth Board of Elections. Alvaro R. Calderón, Jr., for interveners. Gilberto Gierbolini, Solicitor General, and Federico Rodríguez Gelpí, Assistant Solicitor General, for the Commonwealth Board of Elections.

DECISION OF MR. CHIEF JUSTICE NEGRÓN FERNÁNDEZ.

On May 21, 1971, the political group denominated Puerto Rican Union Party, in the process of registration as party by petition, filed a petition before the Commonwealth Board of Elections, requesting that the latter validate towards the total quota of 5 percent of petitions required by law for the registration of a party by petition, some 3,494 petitions signed to in favor of the Puerto Rican Union Party by voters who had previously signed petitions in favor of the registration of the Puerto Rican Independence Party and the Authentic Sovereigntist Party as parties by petition.

It was not until August 3, 1971, that the Commonwealth Board of Elections met to consider the petition of the Puerto Rican Union Party, and it was not until that very meeting

.was held that the members of the Board were given copy of the petition previously filed by said political group. Attorneys who appeared in the petition for registration of the Puerto Rican Union Party as candidates for the general election of 1972, and some of whom also appeared designated as members of the Central Directing Body of said party, were invited to said meeting and attended to argue in favor of their petition.

In view of the remarks of several members of the Board in the sense that they were not in a condition to cast their vote in relation to a proposal made in said meeting by another of its members in favor of the contention made by the Puerto Rican Union Party without previously having the opportunity to study said petition and the case law cited therein and all the possible consequences of the proposal, the Board unanimously agreed to postpone the consideration of the matter until the next meeting which was set for August 9. In this last meeting, after considering the availability of the proposal to adjudicate the aforesaid petitions to the Puerto Rican Union Party and its certification as party by petition, they voted in said order for each and every one of the proposals, and none of them having obtained the unanimous vote, the General Supervisor of Elections proceeded, in conformity with the provisions in § 12 of the Election Law (16 L.P.R.A. § 13), to render in the same manner his decision on each and every one of said points.

The decisions of the Supervisor were to the effect of (1) adjudicating in favor of the Puerto Rican Union Party 3,478 petitions for registration which, until August 5, 1971, had been filed by said group, sworn to and signed by voters who had previously sworn to and signed equal number of petitions for the registration of the Puerto Rican Independence Party as party by petition; as well as 168 petitions for registration which were in the same situation in relation to voters who had previously sworn to petitions filed by the Authentic Sovereigntist Party; and of (2) certifying to the Governor of

the Commonwealth of Puerto Rico, for all legal purposes, that the political group Puerto Rican Union Party had acquired the condition of party by petition.

After each and every one of said decisions had been rendered by the Supervisor, and in that same meeting—as provided by § 13d of the Election Law (16 L.P.R.A. § 19)—the members of the Commonwealth Board of Elections, representatives in said Board of the Puerto Rican Independence Party, Popular Democratic Party, and Authentic Sovereigntist Party, took appeal before the Chief Justice pursuant to the provisions of said § 13d, appeal against the two aforementioned decisions of the Supervisor. The subsequent appeal was taken before the Chief Justice on the 11th of the same month.

Together with the notice of appeal taken before the Chief Justice, appellants requested that the Supervisor be ordered to abstain himself from implementing his decisions until after the appeal was decided.

By Order of August 12, 1971, (1) we granted appellants until the 18th to file their brief, and ordered service of notice to the respondent Board, through the General Supervisor of Elections, as well as to the other members of the Board; and in view of the nature of the decision appealed from, we ordered like service of notice to the person who, according to the records of the Board, appeared as Chairman of the Puerto Rican Union Party; (2) we granted until August 24 in order that the General Supervisor of Elections and the other aforementioned persons proceed to file their answer and brief; (3) the Board was ordered to send, as soon as possible, the complete record and antecedents appearing in said Board in connection with the decision appealed from, including the stenographic transcript of the meeting held on August 9, 1971; (4) the parties were summoned to appear on August 26 to hear their arguments on the merits of the appeal and on any other pertinent point; and (5) in aid of the jurisdiction of

the Chief Justice, the General Supervisor of Elections was ordered to abstain from certifying to the corresponding officer the registration of the political group Puerto Rican Union, as party by petition.

Appellants, on their own right, the Commonwealth Board of Elections through the Solicitor General, and attorney Alvaro R. Calderón, Jr., in representation of the Puerto Rican Union Party and of Dr. Antonio J. González, to whom the Chief Justice acknowledged sua sponte the right to intervene, timely filed their respective briefs and argued the case at the hearing of the 26th, the appeal remaining pending decision, once the General Supervisor of Elections would submit, as he did on the 27th, additional documentary evidence and information required of him by order of the Chief Justice on the day of the hearing; the record of the appeal, which had been sent to this Court on the 24th, having been finally completed yesterday, when the original petition of the Puerto Rican Union Party before the Board was attached to the same.

The position of the parties in this appeal, as set forth in their respective briefs and oral arguments at the hearing held, may be summarized as follows:

Appellants maintain, in essence, that the determination by the Board adjudicating to the Puerto Rican Union Party—for the purpose of the total number of petitions for registration required for its certification as party by petition, by virtue of the provision in the third paragraph of § 14 of the Election Law (16 L.P.R.A. § 20)[1]—is contrary to the ad-

---

[1] "Party by petition shall be any political party which, in accordance with section 112 of this title, registers in the Commonwealth Board of Elections of Puerto Rico, for the immediately following general election, candidates by petition in and for one-half or more of the electoral precincts throughout the Island, and which files in said Board, for said election, petitions for the nomination of candidates signed and sworn to by a number of petitioners equivalent to five (5) percent or more of the total vote cast for all candidates to the office of Governor of Puerto Rico in the

ministrative practice, which has been established for years, of adjudicating, in case of different petitions signed by the same voter in favor of different parties or candidates, to the party or candidate in favor of whom the voter first signed it; that such administrative practice and rule of interpretation of § 37 of the Election Law[2] is the most reasonable and harmonizes the intent of the lawmaker with the rights of the petitioner voters; that the decision of the Board, adjudicating the aforementioned petitions for registration to the Puerto Rican Union Party, constitutes a preferred and privileged treatment, incompatible with the requirements demanded from the Puerto Rican Independence Party and the Authentic Sovereigntist Party, before the latter were certified as parties by petition; that the Board lacks power to repeal § 37 of the Election Law, as it has been construed and applied, its modification and amendment being incumbent upon the legislative power and not upon the Commonwealth Board of Elections.

Interveners, "Puerto Rican Union Party" and Dr. Antonio J. González, maintain, according to the petition submitted to the Board on May 21, 1971, the following:

"(a) The Election Law provides (16 L.P.R.A. § 112) that should a petitioner sign petitions for the registration of more than one party, said petitions shall be rendered null and void.

---

last immediately preceding general election. Said five (5) percent shall be computed by taking into consideration only the petitions for the nomination of candidates filed by said party in accordance with section 112 of this title, in those municipalities in and for which said party has filed in the Commonwealth Board of Elections petitions for the nomination of candidates signed by a number of petitioners equivalent to five (5) percent or more of the votes cast in each one of said municipalities for all candidates to the office of Governor of Puerto Rico in the last immediately preceding general election." (Election Law, § 14, Third Paragraph.)

[2] "Should any petitioner sign a petition or petitions for the nomination of different candidates for the same office, or the same candidate for different offices, or more than once for the same candidate for the same office in the same petition or separate petitions, his petitions in all such cases shall be thereby rendered null and void." (Election Law, § 37, Paragraph 13.)

We do not understand by virtue of what legal provision or juridic logic the Board might disregard the clear letter of the law, and accept as valid one of said petitions and declare the other void. In this case those filed by the aforementioned 3,494 petitioners for the P.I.P. and the A.S.P. have been declared valid and it is sought to declare void the petitions of said voters for the Puerto Rican Union Party. This would be a clear and unfair discrimination having no basis on the law.

"Our position is that the Board must be consistent; either it invalidates them all, or validates them all. The Board having decided to validate those of the P.I.P. and the A.S.P., it must likewise declare valid those of the P.U.P.

"(b) The law, as drafted, is unconstitutional because it restricts the freedom of conscience and limits the choice to vote. If literally applied, it would result in the absurd situation that the very chairman of our party, Dr. Antonio J. González, could not sign a petition for registration for his party, since he had already signed one for the registration of the P.I.P., it would mean that a voter cannot change his mind and join later another political party and contribute to its registration, in violation of the basic constitutional principles."

The reasoning of the Board in support of its action validating the subsequent petitions of the voters who had previously signed other petitions for the registration of other parties is expressed by the Solicitor General in the following synthesis:

"The changing of opinion and expressing it accordingly is of the *essence* of the freedom of the citizens. The electoral process is fundamentally an expression of opinion of the voters and it must be changeable as are the circumstances of the life of a country. The power of the voters to pass judgment cannot be invalidated, permanently binding them to a former petition. It also occurs that the previous petition of the voter cannot be invalidated by reason that, the latter being perfect in itself, it has already given rise to a process of a party registration to which the whole community of voters is entitled.

"As to the paragraph in 16 L.P.R.A. 112 [Section 37 of the Election Law] cited by petitioners, we understand that it refers to conflicting petitions filed by the same voter in relation to the

same act of registration by petition before the consideration of the Board of Elections, and not in relation to the previous registrations which have already become fully effective. This is so because at a given moment and in view of a specific situation, no person can have more than one will. The will is changeable, as we already said, but, of course, it cannot have two simultaneous expressions at a specific moment. The former implies a change of opinion; the latter, a contradiction. Said contradiction is what the law declares impossible and void." (Solicitor General's Brief at pp. 5 and 6.)

One way or the other, all the parties agree that an interpretation of § 37 of the Act, invalidating all the petitions of a voter when the latter signs more than one for the registration of parties or candidates, is constitutionally questionable.

I

The third paragraph of § 4 of Art. VI of the Constitution of the Commonwealth of Puerto Rico, provides:

"All matters concerning the electoral process, registration of voters, political parties and candidates shall be determined by law."

The Election Law—Act No. 79 of June 25, 1919—as amended until July 25, 1952—date on which our Constitution went into effect—continued in full force and effect by virtue of § 1 of the constitutional transitory provisions of Art. IX, which provides that when the Constitution goes into effect "all laws not inconsistent therewith shall continue in full force until amended or repealed, or until they expire by their own terms"; and nowadays the Election Law is in force with the amendments to which it has been subjected since then.

Paragraph 13 of § 37 of said law, which provides "Should any petitioner sign a petition or petitions for the nomination of different candidates for the same office, or the same candidate for different offices, or more than once for the same candidate for the same office in the same petition or separate peti-

tions, his petitions in all such cases shall be thereby rendered null and void." appears identically drafted since June 18, 1924, when said section was amended by Act No. 2 of said date.

■ The administrative practice and the rule of construction of § 37 of the Act—concerning the admission of petitions for registration—rendering valid the first and not the second or subsequent petitions which the same voter may have signed in favor of different parties or candidates, has its origin and justification in the imperatives for the stability of the election process, as well as for the acknowledgment of the fundamental rights of the citizen, among which is the right to suffrage, and as part thereof, the right to organize politically.[3]

---

[3] The only interpretation, in our means, of a provision similar to that in the present paragraph 13 of § 37 of the Election Law, was rendered by the Attorney General of Puerto Rico, Salvador Mestre, in an Opinion to the Executive Secretary of Puerto Rico, on October 11, 1920, in relation to the foregoing provision contained in the very § 13 of said Act, in the sense that "Should a voter sign a petition or petitions more than once, placing the same or other candidate or candidates in nomination for the same office, his signature in all cases shall be disregarded." This provision, as we have indicated in the text, was repealed on June 18, 1924, when the new drafting which continues in force nowadays was adopted, but insofar as it could be understood as similar, for the purpose of the nullity of all the petitions, decreed by the present Act, said Opinion lacks juridic or jurisprudential authority to support it; and its weakness and lack of persuasive value—aside from its erroneous reasoning grounded on fraud—was acknowledged by the Attorney General himself in said Opinion in the following two paragraphs of the same:

"In short, I want to call your attention as to the fact that although I have not found any case identical to ours, the foregoing is my opinion, which only explains my way of interpreting the law.

"Insofar as there is no clear and decisive jurisprudence on these matters and that the question therefor is not definitively decided, I would not like that my sole opinion should establish any line of action to be absolutely followed by this office."

It is obvious that said Opinion did not establish any course of action to be followed by the Executive Secretary of Puerto Rico in the sense of rendering void all the contradictory petitions for registration of a voter, and that, if said opinion had any value, it was that of justifying that the first of said petitions be validated, inasmuch as the case law cited therein was mainly based on statutes which provided so.

■ Said administrative practice and statutory construction—which could be given to § 37 by the Executive Officer or Board in charge of the implementation of the law and of the supervision of the electoral process to avoid making it constitutionally repugnant—continued unaltered until the present case, without the Legislative Assembly, entrusted by the Constitution to determine "all matters concerning the electoral process, registration of voters, political parties and candidates . . . by law," having varied its text.[4]

## II

■■ It would be incumbent upon the Legislature, in the use of its constitutional powers to regulate all matters concerning the electoral process, and not upon the officer or board in charge of the implementation of the law, except as to powers delegated on the latter, or incidental to the power of administration and supervision granted to them, to direct that a voter may swear to whatever number of petitions for registration of political parties or candidates he may desire, without limitation for a general election as to the number of petitions which he may swear to, since such provision would entail the total repeal of paragraph 13 of § 37 of the Election Law and its substitution by another provision entirely different as to that point; and not an interpretation of the said paragraph of § 37,[5] and its administrative application with the intent of safeguarding its constitutionality.

---

[4] Our electoral system also requires that in the general elections the electoral ballot contain a column in order that any voter may vote for any independent candidate. Section 44 of the Election Law (16 L.P.R.A. § 143).

[5] The case cited by appellants, *State* v. *Harmon*, 35 Nev. 189; 127 Pac. Rep. 221 (1912); and those cited by the interveners, *Reynolds* v. *Sims*, 377 U.S. 533, 12 L.Ed.2d 506, 84 S.Ct. 1362 (1964); *Harman* v. *Forssenius*, 380 U.S. 528, 14 L.Ed.2d 50, 80 S.Ct. 1177 (1965), and *Clark* v. *Maryland*, 134 S.E.2d 168, are not applicable to the appeal under consideration, since the latter do not construe a provision or statute identical with § 37 of the Election Law.

In relation to the most recent decision of the Federal Supreme

By virtue thereof, the decision of the Supervisor, of adjudicating in favor of the Puerto Rican Union Party the petitions sworn to by voters who had already sworn to other petitions for the registration of the Puerto Rican Independence Party and the Authentic Sovereigntist Party, cannot prevail.

■ The part of § 37 of the Election Law under our consideration, as it is drafted, would represent a violation of the right to suffrage and of the voter's right to express his will and to create the vehicles of opinion most adequate for his political ideas. For that reason it has never been applied literally. The administrative practice and rule of construction in force until this case, of rendering valid the first petition sworn to by a voter in favor of a political party or candidate, different from that for which he swore to his second or successive petitions for registration, and not the latter, is a reasonable rule which does not establish privilege in a case, or discriminates in the other, provided that after the termination of the process of registration of the party for which he swore to the first petition, and already validated in favor of said party, the voter may swear to a second petition for registration for another party or different candidate. The process may be repeated. This interpretation and application of the law would maintain, on the one hand, the sound principle of a good electoral order, and on the other, the voter's freedom to change his opinion would be maintained under circumstances in which his best judgment of civil responsibility led him to rectify his former decision by the creation of a new vehicle of expression better adjusted to his ideas and political thought.[6]

---

Court analyzing the constitutionality of a state election statute with respect to the requirements for the registration of a party by petition, consult: *Jenness* v. *Fortson*, 403 U.S. 431, 29 L.Ed.2d 554, 91 S.Ct. 1970 (decided June 21, 1971).

[6] Although the Puerto Rican Union Party assumes the position that § 37 of the Election Law (paragraph 13) is unconstitutional, this would not, consequently, favor its case, which is rather grounded on the argu-

## III

From the certification of August 27, 1971, filed by the General Supervisor of Elections, there appears that the Puerto Rican Independence Party was certified as party by petition on January 23, 1970, and the Authentic Sovereigntist Party, on March 24, 1971.[7]

According to the rules of construction aforestated concerning paragraph 13 of § 37 of the Election Law in relation to the administrative practice concerning the acceptance of petitions for registration of political parties or candidates, the petitions sworn to in favor of the Puerto Rican Union Party after January 23, 1970, insofar as petitioners therein would have sworn to petitions for registration in favor of the Puerto Rican Independence Party;[8] and those petitions in favor of the Puerto Rican Union Party sworn to after March 24, 1971, insofar as the petitioners therein would have previously sworn to petitions for registration in favor of the Authentic Sovereigntist Party, should be counted and adjudicated in favor of the Puerto Rican Union Party, if they fulfill the other requirements of law, for the purposes and in

---

ment of discrimination which the administrative interpretation of said law and the practice followed until now represent for the party which files the petitions of voters who have previously sworn to other petitions.

In the alternative, it maintains in its brief that "the law may be interpreted so as to support its constitutional validity in deciding that its prohibition ceases when a party is duly registered, and then, the voters who signed petitions for the registration of the same may sign petitions for the registration of another party."

[7] There appears from said certification, also, that on said date the petitions for registration for the Puerto Rican Union Party and the Authentic Sovereigntist Party had not yet been entered in the tally sheets.

[8] In view of the conclusion we have reached here with respect to the right of a voter to swear to a petition for registration in favor of a political party after the certification of another party by petition, if he had sworn to one in favor of the latter, it is unnecessary to consider the specific case of the intervener, Dr. Antonio J. González.

conformity with the pertinent provisions of § 14 of the Election Law.[9]

For the reasons aforestated, the decisions of the General Supervisor of Elections, object of the present appeal, are overruled, and the case is remanded to the Commonwealth Board of Elections for proper further determinations and in conformance with the decision herein.

LET IT BE NOTIFIED.

It was so ordered as witnesses the signature of the Chief Justice.

(s) LUIS NEGRÓN FERNÁNDEZ

*Chief Justice*

I ATTEST:

(s) JOSÉ L. CARRASQUILLO
*Acting Clerk*

---

[9] At the hearing of this appeal the attorney for the Puerto Rican Union Party, indicated that he considered, based on logic, that the greatest number of petitions submitted by the Puerto Rican Union Party of voters who had previously sworn to petitions in favor of the Puerto Rican Independence Party must have been sworn to after the certification of the latter as party by petition.

From an examination of 118 petitions for registration for the Puerto Rican Union Party corresponding to the precinct of Adjuntas, sent as a sample, on his own initiative, by the General Supervisor of Elections—which on the latter's report to the Board of August 5, 1971, are classified as rejected for the registration of the Puerto Rican Union Party, by reason that they corresponded to voters who had also sworn to petitions in favor of the Puerto Rican Independence Party—there appear 11 sworn to after January 23, 1970.