Luis A. Rivera Lacourt, Baldomero Freyre, y José Aulet, apelantes, v. Junta Estatal de Elecciones, apelada; Partido Unión Puertorriqueña, y Dr. Antonio J. González, interventores.

Número: 21    Resuelto: 31 de agosto de 1971

*Luis A. Rivera Lacourt, pro se, Baldomero Freyre, pro se* y *José Aulet, pro se,* todos miembros de la Junta Estatal de Elecciones; *Alvaro R. Calderón, Jr.,* abogado de los intervenтores; *Gilberto Gierbolini, Procurador General,* y *Federico Rodríguez Gelpí, Procurador General Auxiliar,* abogados de la Junta Estatal de Elecciones.

DECISIÓN DEL JUEZ PRESIDENTE SEÑOR NEGRÓN FERNÁNDEZ.

El 21 de mayo de 1971, la agrupación política en proceso de inscripción como partido por petición, denominada Partido Unión Puertorriqueña, presentó escrito ante la Junta Estatal de Elecciones solicitando que ésta acreditara para el cupo total del 5 por ciento de peticiones requeridas por la ley para la inscripción de un partido por petición, unas 3,494 peticiones suscritas a favor del Partido Unión Puertorriqueña por electores que anteriormente habían suscrito peticiones a favor de la inscripción del Partido Independentista Puertorriqueño

y del Partido Auténtico Soberanista como partidos por petición.

No fue hasta el día 3 de agosto de 1971 que se reunió la Junta Estatal de Elecciones para considerar la solicitud del Partido Unión Puertorriqueña y no fue hasta esa propia sesión que se proveyó a los miembros de la Junta con copia del escrito presentado previamente por la referida agrupación política. A dicha sesión fueron invitados, y concurrieron a argumentar en favor de su solicitud, abogados que figuraban en la petición de inscripción del Partido Unión Puertorriqueña como candidatos para las elecciones generales del 1972, algunos de quienes figuraban también como designados para miembros de la Junta Central de Gobierno de dicho partido.

Ante la observación de varios de los miembros de la Junta de que no estaban en condiciones de emitir su voto sobre una propuesta hecha en esa sesión por otro de sus miembros a favor del planteamiento hecho por el Partido Unión Puertorriqueña, sin antes tener la oportunidad de estudiar dicho escrito y la jurisprudencia en él citada y todas las consecuencias de la propuesta hecha, la Junta acordó por unanimidad posponer la consideración del asunto hasta una próxima sesión que se fijó para el día 9 de agosto. En esta última sesión, luego de discutir la procedencia de la propuesta hecha para adjudicar las peticiones de referencia al Partido Unión Puertorriqueña y su certificación como Partido por petición, se llevó a votación, en ese orden, cada una de dichas propuestas, y no habiendo obtenido unanimidad de votos ninguna de ellas, se procedió por el Superintendente General de Elecciones, de conformidad con lo dispuesto en la Sec. 12 de la Ley Electoral (16 L.P.R.A. sec. 13) a emitir en igual forma su Decisión sobre cada uno de dichos extremos.

Las Decisiones del Superintendente fueron al efecto de (1) contar a favor del Partido Unión Puertorriqueña 3,478 peticiones de inscripción que hasta al día 5 de agosto de 1971

habían sido presentadas por dicha agrupación, juradas y firmadas por electores que anteriormente habían jurado y suscrito igual número de peticiones para la inscripción del Partido Independentista Puertorriqueño como partido por petición; así como 168 peticiones de inscripción en igual situación, con relación a electores que habían jurado anteriormente peticiones presentadas por el Partido Auténtico Soberanista; y (2) certificar al Gobernador del Estado Libre Asociado de Puerto Rico, para todos los fines de ley, que la agrupación política Partido Unión Puertorriqueña había adquirido la condición de Partido por petición.

Luego de emitidas por el Superintendente cada una de sus Decisiones, y en esa propia sesión—conforme se provee en la Sec. 13 (d) de la Ley Electoral (16 L.P.R.A. sec. 19)—los miembros de la Junta Estatal de Elecciones, representantes en dicha Junta de los Partidos Independentista Puertorriqueño, Popular Democrático y Auténtico Soberanista, instaron para ante el Juez Presidente, conforme a las disposiciones de la referida Sec. 13 (d), apelación contra las dos Decisiones del Superintendente ya mencionadas. El subsiguiente escrito ante el Juez Presidente fue presentado el día 11 del propio mes.

Conjuntamente con el escrito de apelación presentado ante el Juez Presidente se solicitó por los apelantes que se ordenara al Superintendente abstenerse de instrumentar sus Decisiones hasta tanto se resolviera la apelación interpuesta.

Mediante Resolución de 12 de agosto de 1971 (1) concedimos a los apelantes hasta el día 18 para radicar su alegato, y ordenamos su notificación a la Junta apelada a través del Superintendente General de Elecciones, así como a los demás miembros de la Junta; y en consideración a la naturaleza de la Decisión apelada, ordenamos igual notificación a la persona que según los archivos de la Junta figurara como Presidente del Partido Unión Puertorriqueña; (2) concedimos hasta el 24 de agosto para que el Superintendente

General de Elecciones y demás personas mencionadas procedieran a presentar su contestación y alegato; (3) se requirió de la Junta que elevara a la mayor brevedad posible el récord completo y antecedentes obrantes en dicha Junta relacionados con la Decisión apelada, incluyendo la transcripción taquigráfica de la sesión celebrada en 9 de agosto de 1971; (4) se convocó a las partes para el 26 de agosto para oir sus argumentos sobre los méritos del recurso y sobre cualquier otro extremo pertinente; y (5) en auxilio de la jurisdicción del Juez Presidente, se ordenó al Superintendente General de Elecciones abstenerse certificar al funcionario correspondiente la inscripción de la agrupación política Unión Puertorriqueña como partido por petición.

Los apelantes por derecho propio, la Junta Estatal de Elecciones por conducto del Procurador General, y el letrado Alvaro R. Calderón, Jr., como representante del Partido Unión Puertorriqueña y del Dr. Antonio J. González a quienes se les reconoció *sua sponte* por el Juez Presidente derecho de intervención, radicaron sus respectivos alegatos en tiempo y argumentaron el caso en la vista del día 26, quedando el recurso pendiente de dictamen una vez el Superintendente General de Elecciones sometiera, como lo hizo el día 27, documentación e información adicional requerídale por orden del Juez Presidente el día de la vista; habiéndose completado finalmente el expediente en apelación que había sido elevado el día 24, en el día de ayer al agregarse al mismo la solicitud original del Partido Unión Puertorriqueña ante la Junta.

La posición de las partes en este recurso, según expuestas en sus respectivos alegatos y argumentos orales en la vista celebrada, pueden sintetizarse así:

Los apelantes, en esencia, sostienen que el acuerdo tomado por la Junta acreditándole al Partido Unión Puertorriqueña —a los fines del número total de peticiones de inscripción requeridas para ser certificado como Partido por petición, en virtud de lo estatuido en el tercer párrafo de la Sec. 14 de

la Ley Electoral (16 L.P.R.A. sec. 20) (¹)—es uno contrario a la práctica administrativa establecida por años de adjudicar en el caso de distintas peticiones del mismo elector a favor de distintos partidos o candidaturas, al partido o candidatura, a favor del cual la suscribió primero el elector; que tal práctica administrativa y norma interpretativa de la Sec. 37 de la Ley Electoral (²) es la más razonable y armoniza la intención del legislador con los derechos de los electores peticionarios; que el acuerdo de la Junta adjudicando las peticiones de inscripción de referencia al Partido Unión Puertorriqueña constituye un trato preferente y privilegiado, incompatible con los requisitos que se le exigieron al Partido Independentista Puertorriqueño y al Partido Auténtico Soberanista, antes de ser éstos certificados como partidos por petición; que la Junta no tiene autoridad para derogar la Sec. 37 de la Ley Electoral, según ha venido siendo interpretada y aplicada, correspon-

---

(¹) "Partido por petición es cualquier partido político que, con arreglo a la Sec. 112 de este título, inscriba en la Junta Estatal de Elecciones de Puerto Rico para las elecciones generales inmediatamente siguientes, candidatos por petición en y para la mitad o más de los precintos electorales de toda la Isla y presente en dicha Junta para dichas elecciones, peticiones para nombramiento de candidatos firmadas y juradas por un número de peticionarios no menor de un cinco por ciento del total de votos depositados para todos los candidatos para el cargo de Gobernador de Puerto Rico en las últimas elecciones generales inmediatamente precedentes. Dicho cinco por ciento deberá computarse tomando en cuenta únicamente las peticiones para nombramiento de candidatos presentadas por dicho partido, con arreglo a la Sec. 112 de este título, en aquellos municipios en y para los cuales dicho partido haya presentado en la Junta Estatal de Elecciones peticiones para nombramiento de candidatos firmadas por un número de peticionarios igual al cinco por ciento o más de los votos depositados en cada uno de dichos municipios para todos los candidatos para el cargo de Gobernador de Puerto Rico en las últimas elecciones generales inmediatamente precedentes." (Tercer Párrafo, Sec. 14 Ley Electoral.)

(²) "Si cualquier peticionario firmare una petición o peticiones para nombramientos de distintos candidatos para el mismo cargo, o el mismo candidato para distintos cargos, o más de una vez por el mismo candidato para el mismo cargo, en la misma petición o peticiones por separado, sus peticiones en todos esos casos quedarán en su virtud nulas y sin efecto." (Párrafo Núm. 13 de la Sec. 37 de la Ley Electoral.)

diendo al poder legislativo su modificación o enmienda, y no a la Junta Estatal de Elecciones.

Los interventores, "Partido Unión Puertorriqueña" y Dr. Antonio J. González, sostienen, conforme al escrito sometido a la Junta en 21 de mayo de 1971, lo siguiente:

"(a) La Ley Electoral provee (16 L.P.R.A. 112) que si un peticionario da su firma para inscribir más de un partido se anulan todas dichas peticiones. No entendemos en virtud de qué disposición legal o lógica jurídica la Junta pueda pasar por encima de la letra clara de la ley y aceptar como válida una de dichas peticiones y nula la otra. En este caso se han declarado válidas las prestadas por los antes referidos 3,494 peticionarios para el P.I.P. y el P.A.S. y se pretende anular las peticiones de estos para el Partido Unión Puertorriqueña. Esto sería una clara e injusta discriminación que no tiene base en la Ley.

Nuestra posición es que la Junta tiene que ser consistente; o las anula todas o las valida todas. Habiendo ya optado la Junta por validar las del P.I.P. y el P.A.S. debe así mismo declarar válidas las del P.U.P.

(b) La Ley, según está redactada es inconstitucional, porque coarta la libertad de conciencia y limita la opción electoral. Si se aplica literalmente, se daría la situación absurda de que el mismo presidente de nuestro partido, Dr. Antonio J. González no podría firmar una petición de inscripción para su partido pues ya había firmado una para la inscripción del P.I.P.; significaría que un elector no puede cambiar de idea y abrazar luego otro partido político y ayudar a su inscripción en violación de principios constitucionales básicos."

El razonamiento de la Junta en apoyo de su actuación dando validez a las subsiguientes peticiones de electores que antes habían suscrito otras peticiones para la inscripción de partidos distintos, está expresada por el Procurador General en la siguiente síntesis:

"Es de la *esencia* de la libertad ciudadana el cambiar su opinión y manifestarse de acuerdo. El proceso electoral fundamentalmente es una expresión de juicio de los electores y éste tiene que ser mudable como lo son las circunstancias de la vida de un país. No puede pues anularse la facultad de enjuiciar del

los electores atándolos permanentemente a una petición anterior. También ocurre que no puede invalidarse la acción peticionaria anterior del elector por razón de que siendo ésta perfecta en sí misma ya ha dado origen a un proceso de inscripción partidista al cual la colectividad de los electores tiene derecho.

En cuanto al fragmento de 16 LPRA 112 [Sec. 37 de la Ley Electoral] citado por los peticionarios entendemos que ésta se relaciona a peticiones conflictivas de un mismo elector con relación al mismo acto de inscripción por petición ante la consideración de la Junta Electoral y no con relación a inscripciones pasadas que ya han surtido plena eficacia. Esto es así porque en un momento dado y ante una situación específica nadie puede tener más de una voluntad. La voluntad es mudable, como ya dijimos, pero claro está, no puede tener dos expresiones simultáneas en determinado momento. Lo primero conlleva un cambio de opinión; lo segundo una contradicción. Esa contradicción es la que la Ley declara imposible y nula." (Páginas 5 y 6 *Alegato del Procurador*.)

En una u otra forma, todas las partes están contestes en que una interpretación de la Sec. 37 de la Ley, anulando todas las peticiones de un elector cuando suscribe más de una para la inscripción de partidos o candidaturas, es cuestionable constitucionalmente.

## I

El tercer párrafo de la Sec. 4 del Art. VI de la Constitución del Estado Libre Asociado de Puerto Rico, provee:

"Se dispondrá por ley todo lo concerniente al proceso electoral y de inscripción de electores, así como lo relativo a los partidos políticos y candidaturas."

La Ley Electoral—Núm. 79 de 25 de junio de 1919—según había sido enmendada hasta el 25 de julio de 1952—fecha en que comenzó a regir nuestra Constitución—continuó en vigor en virtud de la Sec. 1 de las disposiciones transitorias constitucionales del Art. IX, que dispuso que al comenzar a regir la Constitución, "todas las leyes que no estén en conflicto

con la misma continuarán en vigor íntegramente hasta que sean enmendadas o derogadas o hasta que cese su vigencia de acuerdo con sus propias disposiciones"; y hoy día la Ley Electoral rige con las enmiendas de que ha sido objeto desde entonces.

El párrafo 13 de la Sec. 37 de la referida Ley que dispone "Si cualquier peticionario firmare una petición o peticiones para nombramientos de distintos candidatos para el mismo cargo, o el mismo candidato para distintos cargos, o más de una vez por el mismo candidato para el mismo cargo, en la misma petición o peticiones por separado, sus peticiones en todos esos casos quedarán en su virtud nulas y sin efecto." aparece con esa misma redacción desde el 18 de junio de 1924, cuando dicha Sección fue enmendada mediante la Ley Núm. 2 de la indicada fecha.

■ La práctica administrativa y norma interpretativa de la Sec. 37 de la Ley—en lo que concierne a la admisión de peticiones de inscripción—de contar como válida la primera, y no la segunda, o subsiguientes peticiones que un mismo elector haya firmado a favor de distintos partidos o candidaturas, tiene su origen y justificación tanto en imperativos para la estabilidad del proceso electoral, como para el reconocimiento de los derechos fundamentales del ciudadano, entre los cuales está el derecho al sufragio, y como parte de éste, el derecho a organizarse políticamente. (3)

---

(3) La única interpretación, en nuestro medio, a una disposición similar a la del actual párrafo 13 de la Sec. 37 de la Ley Electoral, fue dada por el Procurador General de Puerto Rico, Salvador Mestre, mediante Opinión al Secretario Ejecutivo de Puerto Rico, el 11 de octubre de 1920, con relación a la anterior disposición contenida en la propia Sec. 13 de dicha Ley, en el sentido de que "Si un elector firmare más de una vez una solicitud o solicitudes, en la cual se presentare la misma o distinta candidatura o candidaturas para un mismo cargo, la firma de dicho elector no se tomará en cuenta para ninguna de dichas solicitudes." Esta disposición, como hemos indicado en el texto, desapareció el 18 de junio de 1924 al adoptarse la nueva redacción, que hoy sigue vigente, pero en lo que pudiera entenderse similar, a los efectos de la nulidad de todas las peticiones,

▮▮▮▮▮▮▮▮▮▮▮▮▮

▮ Dicha práctica administrativa e interpretación estatutaria—que podía dar a la Sec. 37 el Funcionario Ejecutivo o Junta encargada de la administración de la ley y de la supervisión del proceso electoral para no hacerla odiosa constitucionalmente-continuó inalterada hasta el presente caso, sin que la Asamblea Legislativa, encargada por la Constitución de disponer "por ley todo lo concerniente al proceso electoral y de inscripción de electores, así como lo relativo a los partidos políticos y candidaturas." haya variado su texto. (4)

## II

▮ Correspondería a la Asamblea Legislativa en el uso de sus poderes constitucionales para reglamentar todo lo relativo al proceso electoral, y no al funcionario o junta encargados de la administración de la ley, excepto en cuanto sean

decretada por la presente ley, dicha Opinión carece de autoridad jurídica o jurisprudencial que la sostenga; y su debilidad y carencia de valor persuasivo—aparte de su erróneo razonamiento fundado en fraude—fue reconocida por el propio Procurador General en dicha Opinión en los siguientes dos párrafos de la misma:

"En conclusión, deseo llamar su atención en cuanto a que aunque no he encontrado ningún caso exactamente igual al nuestro, lo que antecede es mi opinión, la cual es únicamente expositiva de mi modo de interpretar la ley.

"Toda vez que no existe jurisprudencia clara y terminante sobre estos extremos y que la cuestión por tanto no está definitivamente resuelta, no quisiera que mi sola opinión estableciera ninguna línea de conducta a ser seguida en absoluto por esa oficina."

Es obvio que dicha Opinión no estableció línea de conducta al Secretario Ejecutivo de Puerto Rico en el sentido de anular todas las peticiones de inscripción contradictorias de un elector y que si algún valor tuvo fue el de justificar que se contara la primera de dichas peticiones por cuanto la jurisprudencia citada en la misma se fundaba principalmente en estatutos que así lo disponían.

(4) Nuestro sistema electoral exige, además, que en las elecciones generales, la papeleta electoral contenga una columna para que un elector pueda votar por candidatos independientes. Sec. 44 de la Ley Electoral (16 L.P.R.A. sec. 143).

poderes delegados en estos, o incidentales a su facultad de administración y supervisión otorgádasle, disponer que un elector puede jurar cuantas peticiones de inscripción de partidos políticos o candidaturas desee, sin limitación para unas elecciones generales en cuanto al número de peticiones que pueda jurar, ya que tal disposición conllevaría la derogación total del párrafo 13 de la Sec. 37 de la Ley Electoral y su sustitución por otra disposición enteramente distinta en cuanto a dicho extremo; y no una interpretación del referido párrafo de la Sec. 37 (⁵) y su aplicación administrativa en ánimo de salvar su constitucionalidad.

En tal virtud, la Decisión del Superintendente de contar a favor del Partido Unión Puertorriqueña las peticiones juradas por electores que ya habían jurado otras para la inscripción de los Partidos Independentista Puertorriqueño y Auténtico Soberanista, no puede prevalecer.

■ La parte que nos ocupa de la Sec. 37 de la Ley Electoral, tal como está escrita, representaría una conculcación del derecho al sufragio y del derecho del elector a expresar su voluntad y crear los vehículos de opinión que mejor se ajusten a sus ideas políticas. Por eso nunca ha sido aplicada literalmente. La práctica administrativa y norma de interpretación hasta este caso vigentes, de dar efectividad a la primera petición jurada por un elector a favor de un partido político

---

(⁵) El caso citado por los apelantes, *State* v. *Harmon*, 35 Nev. 189; 127 Pac. Rep. 221 (1912); y los citados por los interventores, *Reynolds* v. *Sims*, 377 U.S. 533, 12 L.Ed.2d 506, 84 S.Ct. 1362 (1964); *Hartman* v. *Forssenius*, 380 U.S. 528 L.Ed.2d 50, 80 S.Ct. 117 (1965) y *Clark* v. *Maryland*, 134 S.E.2d 168, no son de aplicación al recurso que nos ocupa, ya que los mismos no interpretan una disposición o estatuto igual a la Sec. 37 de la Ley Electoral.

Sobre la más reciente Decisión del Tribunal Supremo Federal analizando la constitucionalidad de una ley electoral estadual respecto a los requisitos para la inscripción de un partido por petición, consúltese: *Jenness* v. *Fortson*, 403 U.S. 431, 29 L.Ed.2d 554 91 S.Ct. 1970 (resuelto en 21 de junio de 1971).

o candidatura, distintas de aquel para el cual juró su segundo o sucesivas peticiones de inscripción, y no a éstas, es una norma razonable que no establece privilegio en un caso ni discrimina en el otro, siempre que una vez terminado el proceso inscripcionario del partido para el cual juró la primera petición, y ya contada a favor de éste, pueda el elector jurar una segunda petición de inscripción por otro partido o candidatura distinta. El proceso puede repetirse. Con esta interpretación y aplicación de la ley se mantendría, de un lado, el sano principio de un buen orden electoral, y de otro, se mantendría la libertad del elector a cambiar de criterio en circunstancias en que su mejor sentido de responsabilidad ciudadana le llevaron a rectificar su anterior decisión mediante la creación de un nuevo vehículo de expresión que se ajuste mejor a sus ideas y pensamiento político. [6]

## III

■ De certificación de 27 de agosto de 1971 elevada por el Superintendente General de Elecciones aparece que el Partido Independentista Puertorriqueño fue certificado como partido por petición el día 23 de enero de 1970 y el Partido Auténtico Soberanista el 24 de marzo de 1971. [7]

■ Conforme a los criterios interpretativos arriba ex-

[6] Aunque el Partido Unión Puertorriqueña asume la posición de que la Sec. 37 de la Ley Electoral (párrafo 13) es anticonstitucional, ello no tendría la consecuencia de favorecer su caso, que se funda más bien en el argumento del discrimen que la interpretación administrativa de dicha ley y la práctica seguida hasta ahora representan para el Partido que radica peticiones de electores que han jurado otras previamente.

En la alternativa, en su alegato sostiene que "la ley puede interpretarse de forma que se mantenga su validez constitucional al resolverse que su prohibición cesa al quedar debidamente inscrito un partido y, entonces, los electores que dieron su firma para inscribir el mismo, pueden firmar peticiones para la inscripción de otro partido."

[7] De dicha certificación aparece, además, que a esa fecha aún no se había llevado acabo el cotejo de las peticiones de inscripción del Partido Unión Puertorriqueña y las del Partido Auténtico Soberanista.

puestos sobre el párrafo 13 de la Sec. 37 de la Ley Electoral en relación con la práctica administrativa relativa a la aceptación de peticiones de inscripción de partidos políticos o candidaturas, las peticiones juradas a favor del Partido Unión Puertorriqueña con posterioridad al 23 de enero de 1970, en tanto los allí peticionarios hubieren jurado peticiones de inscripción a favor del Partido Independentista Puertorriqueño; (8) y aquellas peticiones a favor del Partido Unión Puertorriqueña juradas con posterioridad al 24 de marzo de 1971, en tanto los allí peticionarios hubieren jurado previamente peticiones de inscripción a favor del Partido Auténtico Soberanista, deberán ser contadas y acreditadas a favor del Partido Unión Puertorriqueña, si reunieren los demás requisitos de ley, a los fines y de conformidad con las disposiciones pertinentes de la Sec. 14 de la propia Ley Electoral. (9)

Por los fundamentos antes expuestos *se dejan sin efecto las Decisiones del Superintendente General de Elecciones objeto del presente recurso, y se devuelve el caso a la Junta*

---

(8) En vista de la conclusión a que aquí hemos llegado respecto al derecho de un elector a jurar una petición de inscripción a favor de un partido político con posterioridad a la certificación de otro partido por petición, si hubiere jurado una a favor de éste, es innecesario considerar el caso específico del interventor, Dr. Antonio J. González.

(9) En la vista oral del presente recurso el letrado del Partido Unión Puertorriqueña indicó que estimaba, por lógica, que el mayor número de peticiones sometidas por el Partido Unión Puertorriqueña de electores que previamente habían jurado peticiones a favor del Partido Independentista Puertorriqueño, debían haber sido juradas con posterioridad a la certificación de este último como partido por petición.

De un examen de 118 peticiones de inscripción del Partido Unión Puertorriqueña correspondiente al precinto de Adjuntas, elevadas como muestra, a su iniciativa, por el Superintendente General de Elecciones— que en el informe de éste a la Junta de 5 de agosto de 1971, se clasifican como rechazadas para la inscripción del Partido Unión Puertorriqueña, por corresponder a electores que también habían jurado peticiones a favor del Partido Independentista Puertorriqueño—aparecen 11 juradas con posterioridad al 23 de enero de 1970.

*Estatal de Elecciones para las determinaciones ulteriores procedentes de conformidad con lo aquí resuelto.*

NOTIFIQUESE
Lo decretó y firma

(Fdo.) Luis Negrón Fernández
*Juez Presidente*

CERTIFICO:
(Fdo.) José L. Carrasquillo
*Secretario Interino*