STATE OF NORTH CAROLINA, EX REL. WILLIAM H. ANDREWS, DISTRICT
ATTORNEY FOR THE FOURTH DISTRICT OF NORTH CAROLINA v.
CHATEAU X, INC., A SOUTH CAROLINA CORPORATION; ATLA THEATERS,
INC., A SOUTH CAROLINA CORPORATION; JAMES RUSS, INDIVIDUALLY AND IN HIS
CAPACITY AS AN OFFICER OF BOTH CHATEAU X, INC. AND ATLA THEATERS, INC.;
ALBERT PELOQUIN, INDIVIDUALLY AND IN HIS CAPACITY AS AN OFFICER OF BOTH
CHATEAU X, INC. AND ATLA THEATERS, INC.; HECTOR RIQUELME, JR.;
FREDERICK OLLIE BYROM; SUSAN RUPE; VICTOR STROOP; JIMMIE
TUCKER HILL; DENISE TERRY LAMB; GEORGE JOHNSON; JOE
HORNSBY; ROBERT JEROME SMITH; AND A PLACE OF BUSINESS KNOWN AS
CHATEAU X THEATER AND BOOKSTORE, HIGHWAY 17 SOUTH, JACKSONVILLE,
NORTH CAROLINA

No. 23

(Filed 4 January 1979)

1. Obscenity § 3— exhibition and sale of obscene matter—nuisance—injunction

When a business has been established as a nuisance because of the exhibi-
tion or sale of obscene matter, the trial judge is not required by G.S. 19-5 to
enjoin the future distribution of any and all obscene matter as defined by G.S.
19-1.1(2) but has the discretion to define what conduct is prohibited as long as
it falls within constitutional and statutory mandates, and the court has the
duty specifically to warn the defendant of the prohibited conduct.

2. Obscenity § 3— exhibition and sale of obscene matter—nuisance—injunction

Where defendants' bookstore was found to be a nuisance because of its ex-
hibition and sale of obscene matter, the trial court was not required to restrain
defendants from selling any lewd matter at all, whether or not it made up a
large part of the store's inventory, and the trial court's order was not er-
roneous in enjoining defendants from selling obscene matter only when such
matter "constitutes a principal or substantial part of [their] stock in trade."

3. Obscenity § 1— exhibition and sale of obscene matter—nuisance—unconstitu-
tional closing of business—severability of provision

Even if G.S. 19-5 unconstitutionally authorizes a judge to close a business
after it has been declared a nuisance because of past exhibitions or sales of
obscene material, which question is not before the Supreme Court, such provi-
sion is severable from the remaining provisions of G.S. Ch. 19 and does not
render G.S. Ch. 19 unconstitutional on its face.

4. Obscenity § 3— exhibition and sale of obscenity—nuisance—burden of proof

G.S. 19-1.1(2) does not unconstitutionally place the burden of proving non-
obscenity on the defendant in a nuisance action; rather, the State is required
to prove all the elements of obscenity found in G.S. 19-1.1(2), including proof
that the material as a whole lacks "serious literary, artistic, political, educa-
tional, or scientific value."

**5. Obscenity § 3— exhibition or sale of "illegal lewd matter"—injunction—absence of requirement of patent offensiveness**

An order enjoining defendants from showing or selling "illegal lewd matter" which "appeals to the prurient interest in sex," which is "without serious literary, artistic, educational, political or scientific value," and which shows certain sexual conduct was not fatally defective because it failed to require specifically that the materials enjoined be "patently offensive" in their depiction of the specified sexual conduct, since the court enjoined only the sale of "illegal lewd matter" which is correctly and completely defined in G.S. 19-1 1(2), and it is permissible for an injunction to include terms that are adequately defined in applicable statutes.

**6. Obscenity § 3— exhibition or sale of obscene matter—injunction not unconstitutional prior restraint**

An order restraining defendants from selling or exhibiting any obscene matter in the future which depicts specified sexual conduct does not constitute an illegal prior restraint in violation of defendants' first amendment right of free speech since (1) the injunction is in effect nothing more than a personalized criminal statute against selling certain obscene material that is directed toward defendants because they sold illegal matter in the past, and the legislature could have constitutionally imposed the same restrictions on the public in general; (2) the order is narrowly drawn and the prohibited conduct is specifically defined; and (3) defendants are not subject to criminal sanctions until they sell or exhibit obscene matter in violation of the court's order, and the State would have the burden of proving beyond a reasonable doubt that defendants sold or exhibited illegal lewd matter in violation of the injunction.

**7. Obscenity § 3— exhibition and sale of obscene matter—nuisance—injunction—contempt proceedings**

The plenary proceedings provided for in G.S. 5A-15 apply to contempt actions following a Chapter 19 injunction.

Justices BRITT and BROCK took no part in the consideration or decision of this case.

Justice EXUM dissenting.

APPEAL by defendants and cross-appeal by the State from *Small, J.*, at the 4 January 1978 Session of ONSLOW Superior Court.

On 12 December 1977 the State, through William H. Andrews, District Attorney for the Fourth District, filed a complaint against defendants, a South Carolina corporation doing business in Jacksonville, North Carolina and its officers and employees. The complaint alleged that defendants maintained a business, Chateau X Theater and Bookstore, for the purpose of illegal exhibitions and sales to the public of obscene and lewd films and

publications as a regular and predominant course of business. Among other relief not relevant to this appeal, it prayed that Chateau X be declared a nuisance under Chapter 19 of North Carolina General Statutes. The State also asked that an injunction issue ordering that defendants be "perpetually enjoined from maintaining, using, continuing, owning or leasing said place known as Chateau X Theater and Bookstore . . . as a nuisance" and "any place in the State of North Carolina as a nuisance."

On 20 December 1977 defendants made a motion to dismiss the action or, in the alternative, to continue it. They based this motion on the fact that there was a declaratory judgment action pending in the United States District Court for the Eastern District of North Carolina to test the constitutionality of Chapter 19. On 4 January 1978 defendants filed their answer along with a motion to dismiss the State's complaint on the ground that Chapter 19 is unconstitutional. After argument, the trial court denied defendants' motion.

The parties, by mutual stipulation, waived a jury trial. Trial was conducted before the judge beginning on 4 January 1978.

At trial the State introduced twenty exhibits into evidence without objection by defendants. Nineteen of these were copies of magazines and films possessed for sale or shown by Chateau X. State's Exhibit Number 20 was an inventory of materials found at that operation on 12 December 1977.

The trial judge personally viewed State's Exhibit Number 15, a film called "Airline Cockpit," and State's Exhibit Number 3, a magazine entitled "Spread Your Legs." The parties mutually stipulated that all the films and magazines listed in the inventory, State's Exhibit Number 20, "contain substantially similar material" as is found in State's Exhibit Number 15 and State's Exhibit Number 3.

The defendants presented no evidence. The parties stipulated, however, "[t]hat if the defendants would testify, the evidence would indicate that the motion pictures exhibited and the books distributed and sold were done to consenting adults."

The trial judge found that State's Exhibits Numbers 15 and 3 are obscene, that the remainder of the nineteen films and magazines introduced into evidence are obscene, and that all the

materials listed in the inventory are obscene. He held that all the above films and magazines are nuisances. He also declared Chateau X itself to be a nuisance under Chapter 19.

The judge ordered that all the material listed on the inventory, State's Exhibit Number 20, be confiscated and destroyed. He enjoined the defendants from exhibiting or selling any of these items. The defendants also were enjoined from selling or showing any other obscene matter in the future which depicted certain specific sexual conduct listed in the order.

In his final order the trial judge interpreted a part of G.S. 19-5 as authorizing the actual closing of a business after it had been declared a nuisance. He held this portion unconstitutional.

Both the defendants and the State gave timely notice of appeal from the trial court's final judgment.

On 24 April 1978 the parties petitioned this Court pursuant to G.S. 7A-31(b) for review prior to it being determined by the Court of Appeals. We allowed the petition on 8 May 1978.

*Attorney General Rufus L. Edmisten by Senior Deputy Attorney General Andrew A. Vanore, Jr., Assistant Attorney General Marvin Schiller and I. Beverly Lake, Jr. for the State.*

*Bailey & Raynor by Edward G. Bailey and Frank Erwin; Arthur M. Schwartz, P.C. by Neil Ayervais for the defendants.*

COPELAND, Justice.

This case concerns the statutory construction and constitutionality of Chapter 19 of North Carolina General Statutes. For the reasons set out below, we have determined that Chapter 19 as interpreted and applied in this case is constitutional; therefore, the judgment of the trial court is affirmed.

Both parties in this action have brought up assignments of error to this Court. The State is challenging certain interpretations and applications of Chapter 19 by the court below. As the resolution of these issues affects the defendants' constitutional questions, we will consider the State's assignments of error on cross-appeal first.

The core of the controversy in this case stems from that part of the trial court's order that enjoins the defendants from selling

or showing obscene matter that is not listed on the inventory. This portion of the order states:

"2. The defendants . . . are hereby enjoined and restrained from:

* * *

d. Possessing for exhibition to the public illegal, lewd matter consisting of films which appeals to the prurient interest in sex without serious literary, artistic, educational, political or scientific value and that depicts or shows:

(1) Persons engaging in sodomy, per os, or per anum,

(2) Enlarged exhibits of the genitals of male and female persons during acts of sexual intercourse, or

(3) Persons engaging in masturbation.

e. Possessing for sale and in selling illegal lewd matter which constitutes a principal or substantial part of the stock in trade at a place of business consisting of magazines, books, and papers which appeal to the prurient interest in sex without serious literary, artistic, educational, political, or scientific value and that depicts or shows:

(1) Persons engaged in sodomy, per os, or per anum,

(2) Enlarged exhibits of the genitals of male and female persons during acts of sexual intercourse, or

(3) Persons engaging in masturbation."

The State contests two aspects of the above injunction. Both of them contain the argument that the judge did not go far enough.

[1] The State first claims the trial court erred by enjoining films and publications showing only "enlarged" exhibits of the genitals during sexual intercourse. It argues that the court was required to prohibit the sale of matter depicting any genitals, enlarged or not, because of the mandates of G.S. 19-5, which reads in part: "If the existence of a nuisance is admitted or established . . . an order of abatement *shall* be entered as part of the judgment in the case." (Emphasis supplied.) Apparently the State is contending that once a business has been established as a nuisance, the

judge is required to enjoin the future distribution of any and all obscene matter as defined by G.S. 19-1.1(2)[1]. We do not agree.

The trial judge necessarily must be given some discretion in formulating his abatement order. The defendants will be subject to contempt of court if they violate the injunction; therefore, it is necessary that they be put on notice as to exactly what material they can and cannot show or sell in the future. *See generally* D. DOBBS, REMEDIES § 2.4 (1973); Developments in the Law—Injunctions, 78 Harv. L. Rev. 994, 1064 (1965). A judge has a *duty* to supply this specificity. Rule 65(d) of the North Carolina Rules of Civil Procedure states that "[e]very order granting an injunction . . . shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts enjoined."

The Legislature must have intended for judges to have some discretion in abating nuisances. "[L]egislative intent is usually ascertained not only from the phraseology of the statute but also from the nature and purpose of the act and the consequences which would follow its construction one way or the other." *In re Hardy*, 294 N.C. 90, 97, 240 S.E. 2d 367, 372 (1978). (Emphasis deleted.)

Chapter 19 as applied to obscene matter treads near the area of free speech. The sanctions for disobeying an abatement order could be severe. This Court need not decide today whether a judge must always issue a general injunction, such as this one, against selling or exhibiting obscene matter not actually before the court. *See D. Dobbs, supra* at § 2.11 note 22. We do hold, how-

---

1. G.S. 19-1.1(2) states:

"Lewd matter" is synonymous with "obscene matter" and means any matter:

(a) Which the average person, applying contemporary community standards, would find, when considered as a whole, appeals to the prurient interest; and

(b) Which depicts patently offensive representations of:

    1. Ultimate sexual acts, normal or perverted, actual or simulated;

    2. Masturbation, excretory functions, or lewd exhibition of the genitals or genital area;

    3. Masochism or sadism; or

    4. Sexual acts with a child or animal.

Nothing herein contained is intended to include or proscribe any writing or written material, nor to include or proscribe any matter which, when considered as a whole, and in the context in which it is used, possesses serious literary, artistic, political, educational, or scientific value.

Andrews v. Chateau X

ever, that if such an order does issue, the trial court has some discretion to define what conduct is prohibited as long as it falls within constitutional and statutory mandates, and he has the duty to specifically warn the defendant of the prohibited conduct. This assignment of error is overruled.

[2] The State next argues that the trial court's order was erroneous because it enjoined the defendants from selling obscene matter only when such material "constitutes a principal or substantial part of [their] stock in trade." It contends that the judge was required to restrain the defendants from selling any lewd matter at all, whether or not it made up a large part of defendants' inventory.

A careful reading of the statute refutes this argument. As the State points out, G.S. 19-1.2[2] defines nuisances in terms of businesses that regularly display or sell lewd material and the obscene matter itself. However, G.S. 19-1.2(5) states that a lewd publication is a nuisance only when "possessed at a place which is a nuisance." In order for a bookstore to be a nuisance, the lewd publications must "constitute a principal or substantial part of the stock in trade."

Thus, not every isolated obscene publication is a nuisance that can be abated under G.S. 19-5. First it must be found that the book or magazine is one of many, such that all together they make up a large part of the bookstore's inventory. Once this initial determination is made, however, each individual obscene publication is a nuisance, and any and every one of them can be abated. This assignment of error is overruled.

2. G.S. 19-1.2. Types of nuisances.—The following are declared to be nuisances wherein obscene or lewd matter or other conduct prohibited in G.S. 19-1(a) is involved:

(1) Any and every place in the State where lewd films are publicly exhibited as a predominant and regular course of business, or possessed for the purpose of such exhibition;

(2) Any and every place in the State where a lewd film is publicly and repeatedly exhibited, or possessed for the purpose of such exhibition;

(3) Any and every lewd film which is publicly exhibited, or possessed for such purpose at a place which is a nuisance under this Article;

(4) Any and every place of business in the State in which lewd publications constitute a principal or substantial part of the stock in trade;

(5) Any and every lewd publication possessed at a place which is a nuisance under this Article;

(6) Every place which, as a regular course of business, is used for the purposes of lewdness, assignation, gambling, the illegal possession or sale of intoxicating liquor, the illegal possession or sale of narcotic drugs as defined in the North Carolina Controlled Substances Act, or prostitution, and every such place in or upon which acts of lewdness, assignation, gambling, the illegal possession or sale of intoxicating liquor, the illegal possession or sale of narcotic drugs as defined in the North Carolina Controlled Substances Act, or prostitution, are held or occur.

The trial court determined that a part of G.S. 19-5, stating that the judge's final order "may also require the effectual closing of the place against its use thereafter for the purpose of conducting any such nuisance," authorizes the complete closing of a theater or bookstore once it has been declared a nuisance under Chapter 19. It held that portion ineffectual in nuisance actions dealing with obscene matter because such a closing would be an unconstitutional prior restraint on free speech. The State concedes in its brief and in its argument before this Court that any complete closing of a business for past sales of obscene material would constitute illegal prior restraint. We agree. *See Organization for a Better Austin v. Keefe,* 402 U.S. 415, 29 L.Ed. 2d 1, 91 S.Ct. 1575 (1971). Other states have so held. *See, e.g., Sanders v. State,* 231 Ga. 608, 203 S.E. 2d 153 (1974); *State v. A Motion Picture Entitled "The Bet,"* 219 Kan. 64, 547 P. 2d 760 (1976); *Gulf States Theatres of Louisiana, Inc. v. Richardson,* 287 So. 2d 480 (La. 1973).

The State contends, however, that the trial court erred in interpreting G.S. 19-5 as authorizing such a complete closing. That issue is not properly before the Court at this time. This interpretation of the statute was not excepted to by the State, and it also was not included in its grouping of exceptions and assignments of error in the record on appeal.

Under Rule 10 of the Rules of Appellate Procedure, "the scope of review on appeal is confined to a consideration of those exceptions set out and made the basis of assignments of error in the record on appeal." This mandate is subject to various exceptions, none of which are relevant here. The State is as much bound by these Rules as other parties before the courts of this State. Thus, we do not now decide whether G.S. 19-5 does authorize a judge to completely close a business after it has been declared a nuisance because of past exhibitions or sales of obscene material.

We turn now to defendants' assignments of error. At the outset, it is important to note what issues are not before this Court. The trial judge found all the items listed in the inventory, totaling over five hundred different films and magazines, to be legally obscene. Defendants do not contest this finding. Furthermore, from a cursory examination of some of that matter, suffice

it to say that it is, in the words of Chief Justice Burger, "offensive to the point of being nauseous." *Kaplan v. California*, 413 U.S. 115, 117, 37 L.Ed. 2d 492, 496, 93 S.Ct. 2680, 2683 (1973). Thus, we are dealing here not with borderline obscenity but rather with patently hard-core pornography.

Secondly, the defendants do not object to that provision of the court's order restraining them from selling or exhibiting the material before the court. In essence, then, the defendants are attacking only the statute itself and that portion of the final order enjoining them from selling or showing obscene matter not before the court. We now turn to these contentions.

[3] Defendants first assert the trial court erred in denying their motion to dismiss the State's complaint before trial. Although it is somewhat unclear, apparently they argue that Chapter 19 of North Carolina General Statutes is unconstitutional on its face, thereby invalidating any action taken pursuant to it.

The defendants contend that the act in question is unconstitutional *per se* in two respects. First, they assert G.S. 19-5 authorizes the complete closing of a business in violation of the first amendment right of free speech. As stated above, that issue is not being decided by the Court at this time. Assuming, however, that G.S. 19-5 does allow such an illegal action, defendant's position is still untenable.

When only part of a statute is unconstitutional, the constitutional portions will still be given effect as long as they are severable from the invalid provisions. *State v. Smith*, 265 N.C. 173, 143 S.E. 2d 293 (1965); *Clark v. Meyland*, 261 N.C. 140, 134 S.E. 2d 168 (1964). To determine whether the portions are in fact divisible, the courts first see if the portions remaining are capable of being enforced on their own. They also look to legislative intent, particularly to determine whether that body would have enacted the valid provisions if the invalid ones were omitted. *See Hobbs v. Moore County*, 267 N.C. 665, 149 S.E. 2d 1 (1966).

We find from an examination of the statute itself that Chapter 19 is sufficiently complete when this provision of G.S. 19-5, allegedly authorizing the padlocking of a business, is deleted. As that portion relates to only one of many possible remedies a court can adopt in its final order, the statute can be adequately

Andrews v. Chateau X

enforced without it. Furthermore, in G.S. 19-8.3 the Legislature has provided guidance for dealing with its intent in this area:

"If any section, subsection, sentence, or clause of this Article is adjudged to be unconstitutional or invalid, such adjudication shall not affect the validity of the remaining portion of this Article. It is hereby declared that this Article would have been passed, and each section, sentence, or clause thereof, irrespective of the fact that any one or more sections, subsections, sentences or clauses might be adjudged to be unconstitutional, or for any other reason invalid."

This argument is without merit.

[4]    The defendants also contend Chapter 19 is unconstitutional on its face because it places the burden of proving non-obscenity on a defendant in a nuisance action. They claim that G.S. 19-1.1(2), set out above in footnote 1, requires the defendant to prove as an affirmative defense that the material before the court as a whole lacks "serious literary, artistic, political, educational, or scientific value."

In *Miller v. California*, 413 U.S. 15, 37 L.Ed. 2d 419, 93 S.Ct. 2607 (1973), the United States Supreme Court laid down the present constitutional test for obscenity.

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Id.* at 24, 37 L.Ed. 2d at 431, 93 S.Ct. at 2615. (Citation omitted.)

It is clear that the burden of proving obscenity must be on the State. *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 43 L.Ed. 2d 448, 95 S.Ct. 1239 (1975).

It is equally well settled, however, that legislative acts are presumed to be constitutional, and this Court will interpret a statute so as to comport with constitutional mandates unless such a construction is unreasonable. *See, e.g., Painter v. Board of*

*Education*, 288 N.C. 165, 217 S.E. 2d 650 (1975); *Highway Commission v. Industrial Center*, 263 N.C. 230, 139 S.E. 2d 253 (1964). Therefore, we find that the State is required to prove all the elements of obscenity found in G.S. 19-1.1(2) in a nuisance action, including proof that the material as a whole lacks "serious literary, artistic, political, educational, or scientific value." The trial judge properly denied defendants' motion to dismiss the State's complaint.

[5] The defendants next assert that the judge's final order dealing with illegal lewd matter not before the court enjoined absolutely protected matter. They claim that the order restrained the sale of non-obscene material because it failed to require that the magazines and films enjoined be "patently offensive" in their depiction of the specified sexual conduct.

The *Miller* test of obscenity contains three elements, one of which is that the material depicts defined sexual conduct "in a patently offensive way." A comparison of that test and G.S. 19-1.1 (2) shows that Chapter 19's definition of "lewd matter" almost exactly tracks the Supreme Court's language in *Miller*. In his final order, the trial court enjoined the defendants from showing or selling "illegal lewd matter" which "appeals to the prurient interest in sex," which is "without serious literary, artistic, educational, political or scientific value," and which shows certain sexual conduct. Thus, although the order restated almost all of the definition of obscenity in *Miller* and in G.S. 19-1.1(2), it did not specifically state that the sexual conduct being depicted be "patently offensive."

This minor omission is not fatal to the injunction. Other courts have held it permissible for an injunction to include terms that are adequately defined in applicable statutes. *See, e.g., Gulf King Shrimp Co. v. Wirtz*, 407 F. 2d 508 (5th Cir. 1969); *Wilson Finance Co. v. State*, 342 S.W. 2d 117 (Tex. Civ. App. 1960). In the case before us the trial judge enjoined only the sale of "illegal lewd matter" which is correctly and completely defined in G.S. 19-1.1(2). Thus, the constitutional requirements of *Miller* have been met, and defendants have been restrained from dealing in only legally obscene magazines and films and not ones protected by the first amendment. This assignment of error is overruled.

[6] Defendants' main argument is that the judge's order restraining them from selling or exhibiting obscene matter not actually before the court is unconstitutional. They claim such action constitutes an illegal prior restraint in violation of their first amendment right of free speech.

The United States Supreme Court has repeatedly stated that the first and fourteenth amendments are not absolute. Even the greatly revered right to freedom of speech is subject to various exceptions, one of which is obscenity. "This much has been categorically settled by the Court, that obscene material is unprotected by the First Amendment." *Miller v. California, supra* at 23, 37 L.Ed. 2d at 430, 93 S.Ct. at 2614. It is equally well settled that the states have a long-recognized legitimate interest in regulating obscenity in the commercial context, which has become big business. *See generally* Cook, The X-Rated Economy, FORBES, Vol. 122, No. 6, Sept. 18, 1978.

> "The sum of experience . . . affords an ample basis for legislatures to conclude that a sensitive, key relationship of human existence, central to family life, community welfare, and the development of human personality, can be debased and distorted by crass commercial exploitation of sex. Nothing in the Constitution prohibits a State from reaching such a conclusion and acting on it legislatively." *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 63, 37 L.Ed. 2d 446, 460, 93 S.Ct. 2628, 2638 (1973).

A State can constitutionally attempt to control commercial obscenity through its criminal laws. *Roth v. United States,* 354 U.S. 476, 1 L.Ed. 2d 1498, 77 S.Ct. 1304 (1957). However, that is not the only avenue open to it.

> "We need not linger over the suggestion that something can be drawn out of the Due Process Clause of the Fourteenth Amendment that restricts [a state] to the criminal process in seeking to protect its people against the dissemination of pornography. It is not for this Court thus to limit the State in resorting to various weapons in the armory of the law. Whether proscribed conduct is to be visited by a criminal prosecution or by a *qui tam* action or by an injunction or by some or all of these remedies in combination, is a matter within the legislature's range of choice." *Kingsley*

*Books v. Brown*, 354 U.S. 436, 441, 1 L.Ed. 2d 1469, 1473-74, 77 S.Ct. 1325, 1327-28 (1957). *See also Times Film Corp. v. Chicago*, 365 U.S. 43, 5 L.Ed. 2d 403, 81 S.Ct. 391 (1961).

Of course, the legislature must choose those means that are within constitutional boundaries.

Defendants have concluded that because it is an injunction they are attacking, that remedy automatically constitutes a prior restraint. We note, however, that in this area prior restraint normally means when allegedly obscene material is seized or preliminarily enjoined before a judicial declaration of obscenity, *see, e.g., Marcus v. Search Warrant*, 367 U.S. 717, 6 L.Ed. 2d 1127, 81 S.Ct. 1708 (1961); *Kingsley Books v. Brown, supra*, or when a person is required to submit material for the approval of a licensing body before it is allowed to be distributed or shown to the public. *See, e.g., Times Film Corp. v. Chicago, supra; Kingsley International Pictures Corp. v. Regents*, 360 U.S. 684, 3 L.Ed. 2d 1512, 79 S.Ct. 1362 (1959). In fact, we could find no decision by the United States Supreme Court that struck down an injunction such as this one or that even labelled one a prior restraint.

Assuming, however, that this injunction does fit the definition of a prior restraint, our inquiry as to its legality does not end there. For prior restraints are not *per se* unconstitutional. *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 43 L.Ed. 2d 448, 95 S.Ct. 1239 (1975). Rather, the courts must test its validity by its operation in practice, and they have looked to see how the statute differs in effect from a criminal law against selling obscene matter. *Kingsley Books v. Brown, supra*.

In *Kingsley Books* the Supreme Court compared a New York statute, authorizing a preliminary injunction against the distribution of allegedly obscene matter for a short time pending trial, with a criminal obscenity law. In upholding that statute, that Court stated:

"Criminal enforcement and the proceeding under [the New York statute] interfere with a book's solicitation of the public precisely at the same stage. In each situation the law moves after publication; the book need not in either case have yet passed into the hands of the public. . . . In each case the bookseller is put on notice by the complaint that sale of

the publication charged with obscenity may in the period before trial subject him to penal consequences. In one case he may suffer fine and imprisonment for violation of the criminal statute, in the other, for disobedience of the temporary injunction. The bookseller may of course stand his ground and confidently believe that in any judicial proceeding the book could not be condemned as obscene, but both modes of procedure provide an effective deterrent against distribution prior to adjudication of the book's content—the threat of penalization." *Id.* at 442-43, 1 L.Ed. 2d at 1475, 77 S.Ct. at 1328-29.

Although we realize that the preliminary injunction in *Kingsley* is quite different from the injunction being scrutinized in this case, the Court's analysis provides us with some guidance. The judge's order here is restricted to legally obscene matter; in fact, it is limited to only a specified portion of what is legally obscene. Thus, the defendants suffer less indecision as to what materials they can deal in under the injunction than they would under a usual criminal obscenity statute. It is true that the defendants may be fined or imprisoned if they violate the injunction, but those same consequences could flow from a violation of the criminal law.

In fact, under a Chapter 19 nuisance proceeding, unlike a prosecution under a criminal law, a defendant gets two chances. Before such an injunction issues, a court must find that a defendant sold illegal lewd matter in the past; however, he is not subject to criminal sanctions until he sells obscene matter again in violation of the court's order. *See* Rendleman, *Civilizing Pornography: The Case For An Exclusive Obscenity Nuisance Statute,* 44 Chi. L. Rev. 509, 556 (1977).

There is no significant difference procedurally in a criminal action for selling obscenity and in a contempt action for violation of an injunction. In both proceedings the defendant can always defend on the ground that the material is not legally obscene. *See McKinney v. Alabama,* 424 U.S. 669, 47 L.Ed. 2d 387, 96 S.Ct. 1189 (1976). The burden is on the State to prove obscenity beyond a reasonable doubt. *See* G.S. 5A-15(f) (Cum. Supp. 1977). Although a defendant is not entitled to a jury trial in the contempt action, the United States Supreme Court has held that a defendant has

no constitutional right to a jury trial in criminal contempt actions if the authorized penalty or the penalty actually imposed does not exceed six months imprisonment. *Taylor v. Hayes*, 418 U.S. 488, 41 L.Ed. 2d 897, 94 S.Ct. 2697 (1974). Under G.S. 19-4, a defendant is subject only to "a fine of not less than two hundred ($200.00) or more than one thousand dollars ($1,000), or by imprisonment in the county jail not less than three or more than six months, or by both fine and imprisonment." Thus, an injunction such as this one is in effect nothing more than a personalized criminal statute against selling certain obscene material that is directed toward the defendants because they sold illegal matter in the past. As the Legislature could have constitutionally imposed the same restrictions on the public in general, it is not an unconstitutional prior restraint.

[7]  Although this point has not been raised by any party to this lawsuit, we note that G.S. 19-4 authorizes a judge to "summarily try and punish the offender" for violation of an injunction issued under Chapter 19. While this "summary" action is not defined by the Legislature, we emphasize that the procedural safeguards outlined above must be followed. *See Harris v. United States*, 382 U.S. 162, 15 L.Ed. 2d 240, 86 S.Ct. 352 (1965); *Cooke v. United States*, 267 U.S. 517, 69 L.Ed. 767, 45 S.Ct. 390 (1925).

Although there are provisions for summary criminal contempt proceedings in G.S. 5A-13 and G.S. 5A-14, they apply only to acts of contempt committed near or before a judicial officer which are "likely to interrupt or interfere with matters then before the court." A violation of an order such as this one certainly does not fall within that category. Therefore, the plenary proceedings provided for in G.S. 5A-15 apply to contempt actions following a Chapter 19 injunction.

Defendants strongly assert that this case is controlled by *Near v. Minnesota*, 283 U.S. 697, 75 L.Ed. 1357, 51 S.Ct. 625 (1931). That case concerned a state statute that authorized abatement of certain nuisances, one of which was "a malicious, scandalous and defamatory newspaper." The trial court found the newspaper in question to be a public nuisance, and it permanently enjoined defendants "from further conducting said nuisance under the name and title of said The Saturday Press or any other name or title." The United States Supreme Court struck down the in-

junction, declaring that it constituted an invalid prior restraint on defendants' first amendment right to freedom of the press. While there are some analogies between *Near* and this case, we feel that the two are distinguishable in several important respects.

The defendants in *Near* operated a newspaper that chiefly made allegations of misconduct directed toward public officers. The Court, in dealing with the issue of freedom of the press repeatedly emphasized that "[t]hat liberty was especially cherished for the immunity it afforded from previous restraint of the publication of censure of public officers and charges of official misconduct." *Id.* at 717, 75 L.Ed. at 1368, 51 S.Ct. at 631.

The difference between trying to limit that type of expression and obscenity has been recognized. "[I]t is manifest that society's interest in protecting this type of expression [erotic material] is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate." *Young v. American Mini Theatres*, 427 U.S. 50, 70, 49 L.Ed. 2d 310, 326, 96 S.Ct. 2440, 2452 (1976). We agree with Justice Stevens when he said: "It seems to me ridiculous to assume that no regulation of the display of sexually oriented material is permissible unless the same regulation could be applied to political comment." *Smith v. United States*, 431 U.S. 291, 318-19, 52 L.Ed. 2d 324, 346-47, 97 S.Ct. 1756, 1773 (1977) (Stevens, J., dissenting on other grounds). *See also Kingsley Books v. Brown, supra* at 445, 1 L.Ed. 2d at 1476, 77 S.Ct. at 1330.

It is clear from the *Near* decision itself that the Court did not intend for it to apply to injunctions concerning obscene materials.

> "[T]he protection even as to previous restraint is not absolutely unlimited. But the limitation has been recognized only in exceptional cases:
> . . . . No one would question but that a government might prevent actual obstruction to its recruiting service or the publication of the sailing dates of transports or the number and location of troops. *On similar grounds, the primary requirements of decency may be enforced against obscene publications.* . . . These limitations are not applicable here." *Near v. Minnesota, supra* at 716, 75 L.Ed. at 1367, 51 S.Ct. at 631. (Emphasis supplied.)

The Minnesota statute in *Near* also authorized an injunction against obscene publications declared to be nuisances. However, the Court specifically limited its holding to striking down clause (b) of the act that dealt with malicious and defamatory newspapers. "The opinion seems to concede that under clause (a) of the Minnesota law the business of regularly publishing and circulating an obscene periodical may be enjoined as a nuisance." *Id.* at 737, 75 L.Ed. at 1378, 51 S.Ct. at 638 (Butler, J., dissenting).

The Court in *Near* was also concerned about the lack of specificity in the trial court's injunction, which restrained the defendants from publishing "any publication whatsoever which is a malicious, scandalous or defamatory newspaper, as defined by law." The Court noted that "scandalous and defamatory" are broadly defined by law to include publications charging official misconduct. Therefore, if one of the defendants' future editions contained any such allegations, the defendants would then have to prove that the publication is "usual and legitimate," "consistent with the public welfare," and published with "good motives and for justifiable ends" in order not to be held in violation of the order. The Supreme Court recognized that these are vague standards at best.

Our case is different. We have already stated that the burden would be entirely on the State to prove that these defendants had shown or sold illegal lewd matter in violation of the injunction. More importantly, this order is narrowly drawn, and the prohibited conduct is specifically defined.

The defendants assert that the danger here is in self-censorship; they will limit their sale of constitutionally protected matter for fear that they may violate the injunction. The Supreme Court has addressed this issue.

> "The fact that the First Amendment protects some, though not necessarily all, [erotic] material from total suppression does not warrant the further conclusion that an exhibitor's doubts as to whether a borderline film may be shown in his theater . . . involves the kind of threat to the free market in ideas and expression that justifies the exceptional approach to constitutional adjudication recognized in cases like *Dombrowski v. Pfister*, 380 U.S. 479 [holding that a person can collaterally attack the constitutionality of a criminal law that

Andrews v. Chateau X

chills free speech in the political context]." *Young v. American Mini Theatres, supra* at 61, 49 L.Ed. 2d at 321, 96 S.Ct. at 2448.

We are sensitive to the importance of defendants' claim that their first amendment right to free speech is being chilled by the injunction against future sales of unnamed matter. However, in light of the unquestionably obscene nature of all defendants' films and magazines before the court below, the fact that the defendants are adequately warned of which materials they cannot sell or exhibit by the specifically drawn order, and the procedural safeguards afforded the defendants, we find that the injunction is not an unconstitutional prior restraint.

As to all issues that are properly before this Court, the trial court is in all respects

Affirmed.

Justices BRITT and BROCK took no part in the consideration or decision of this case.

Justice EXUM dissents.

Justice EXUM dissenting.

As the majority opinion notes at the outset, the present case "concerns the statutory construction and constitutionality of Chapter 19 of [the] North Carolina General Statutes." I disagree in part with the majority's handling of both aspects. As to the first, the majority upholds an injunction the breadth of which is not authorized by the statute. As to the second, the procedure upheld here is an unconstitutional prior restraint on the exercise of freedom of speech and the press.

I agree that the "core of the controversy in this case stems from that part of the trial court's order that enjoins defendants from selling or showing obscene matter that is not listed on the inventory," *i.e.*, matter described in the abstract by the statutory definition of obscenity that defendant might acquire in the future. The majority assumes, without stating its reasons therefor, that the trial court was authorized by the statute to enter an order this broad. As I read the statute, it authorizes only an injunction

against future possession or sale of matter before the court and judicially declared to be obscene at the proceeding in which a defendant is adjudged to be maintaining a nuisance.

Chapter 19, which is entitled "Abatement of Nuisances," is not an easy statute to comprehend. Besides obscenity, it deals with places used for purposes of "assignation, prostitution, gambling, illegal possession or sale of intoxicating liquors [and] illegal possession or sale of narcotic drugs . . . ." G.S. 19-1(a). It is, in other words, a general nuisance abatement statute. One of the key methods of abatement it seems to contemplate is the closing of the place where the nuisance is maintained. *See* G.S. 19-2.1, 19-5, 19-6, 19-7. Insofar as these closing provisions might be applied to a place that disseminates printed material or motion pictures, there are, it is conceded, serious constitutional questions. *See State v. A Motion Picture Entitled "The Bet,"* 219 Kan. 64, 547 P. 2d 760 (1976); *General Corporation v. Sweeton,* 294 Ala. 657, 320 So. 2d 668 (1975).

There are, however, other remedies provided under the statute against one maintaining a nuisance. It is one of these other remedies that is involved here. In addition to the abatement of the nuisance by closing, G.S. 19-2.1 provides for a suit "perpetually to enjoin all persons from maintaining the same, and to enjoin the use of any structure or thing adjudged to be a nuisance under this Chapter . . . ." The statute's primary remedial provisions are set out in G.S. 19-5, as follows:

> "*Content of final judgment and order.*—If the existence of a nuisance is admitted or established in an action as provided for in this Chapter an order of abatement shall be entered as a part of the judgment in the case, *which judgment and order shall perpetually enjoin the defendant and any other person from further maintaining the nuisance at the place complained of, and the defendant from maintaining such nuisance elsewhere within the jurisdiction of this State.* Lewd matter, illegal intoxicating liquors, gambling paraphernalia, or substances proscribed under the North Carolina Controlled Substances Act shall be destroyed and not be sold.

"Such order may also require the effectual closing of the place against its use thereafter for the purpose of conducting any such nuisance.

"The provisions of this Article, relating to the closing of a place with respect to obscene or lewd matter, shall not apply in any order of the court to any theatre or motion picture establishment which does not, in the regular, predominant, and ordinary course of its business, show or demonstrate lewd films or motion pictures, as defined in this Article, but any such establishment may be permanently enjoined from showing such film judicially determined to be obscene hereunder and such film or motion picture shall be destroyed and all proceeds and moneys received therefrom, after the issuance of a preliminary injunction, forfeited." (Emphasis supplied.)

Under this provision the question whether the injunction here is authorized boils down to what is meant by enjoining the defendant or any other person from "further maintaining the nuisance" and from "maintaining such nuisance elsewhere." This language implies a limitation on the scope of injunctive relief to materials before the court at the time of the determination that a nuisance exists. The acts that can be enjoined are "further maintaining *the* nuisance" or "maintaining *such* nuisance elsewhere." The General Assembly has chosen at those two points in this provision to use quite specific language. This language must refer to the particular materials found by the trial court to be "lewd matter" and on which it must have based its determination that a nuisance existed. Thus, a defendant can under the statute be enjoined from restocking the same materials that have once been judicially determined obscene. The statute does not, however, give the court the power to enjoin a defendant from selling or showing other materials that are not before it.

In addition to avoiding a serious constitutional question, *see In re Arthur*, 291 N.C. 640, 231 S.E. 2d 614 (1977); *In re Dairy Farms*, 289 N.C. 456, 223 S.E. 2d 323 (1976), interpreting the statute in this fashion would make it compatible with our criminal obscenity statutes. *See* G.S. 14-190.1 through 14-190.8. Under those statutes, there is provided "an adversary determination of the question of whether books, magazines, motion pictures

or other materials are obscene prior to their seizure or prior to a criminal prosecution relating to such materials." G.S. 14-190.2(a). Thus under our criminal statutes, no one can be prosecuted for selling, showing, distributing or disseminating any material until it has first been determined to be obscene. Where the General Assembly has not spoken more clearly, it is reasonable to assume that it intended this related nuisance statute, which carries with it a possibility of contempt punishment, *see* G.S. 19-4, to follow a similar procedure.

I think the injunction is broader than permitted by the statute and should not be upheld in its entirety. Furthermore the majority's contrary interpretation renders the statute unconstitutional insofar as it permits an injunction against future expression.

The trial judge enjoined defendants from "possessing for exhibition to the public" and "possessing for sale and selling" various kinds of "lewd matter." This "lewd matter" was described generically in the injunction itself in terms of the statutory prohibition. *See* G.S. 19-1.1(2). The injunction thus seeks to proscribe categories of expression rather than any particular film or publication which has been specifically and judicially declared violative of the statute. It prohibits the future possession of unnamed films, magazines, books and papers and subjects defendants to possible fines and imprisonment prescribed in G.S. 19-4 if they should violate it by possessing any of these generically described items which might later be judicially determined in a contempt proceeding to fit within its proscription.

Insofar as the statute authorizes this kind of injunction I believe it and, therefore, the injunction itself contravenes the freedom of speech and freedom of the press clauses of the First Amendment as applied to the states under the Fourteenth Amendment. To me this is the kind of prior restraint against future expression which the United States Supreme Court has consistently and rightly determined to be inconsistent with the guarantees of the First Amendment. The highest courts of at least three other states have found orders virtually identical to the one here to be unconstitutional prior restraints. *Parish of Jefferson v. Bayou Landing Ltd., Inc.*, 350 So. 2d 158, 165-68 (La. 1977); *Mitchem v. Schaub*, 250 So. 2d 883 (Fla. 1971); *New Rivieria*

Andrews v. Chateau X

*Arts Theatre v. State*, 219 Tenn. 652, 412 S.W. 2d 890 (1967). In addition, in a carefully considered opinion, Judge Franklin T. Dupree, Jr., an able jurist noted for his industry and scholarship, has held that insofar as G.S. 19-5 allows an injunction against distribution of materials not previously adjudged obscene, it is unconstitutional. *Fehlhaber v. State*, 445 F. Supp. 130 (E.D.N.C. 1978). Examination of the relevant constitutional doctrines as applied by the Supreme Court leaves no doubt that these results were correct.

In *Paris Adult Theatre I v. Slaton*, 413 U.S. 49 (1973), Georgia state prosecutors had filed civil complaints against an Atlanta theater alleging that it was exhibiting two obscene films contrary to a Georgia statute. The complaint prayed that the two films be declared obscene and that the theater be enjoined from exhibiting them. At a non-jury trial, the judge assumed that the films were obscene but ruled that inasmuch as the theater took reasonable precautions against permitting minors to enter and view the films it was constitutionally impermissible to enjoin their further showing. The Georgia Supreme Court reversed. It described the films as "hard core pornography" leaving "little to the imagination" and held that their further exhibition should have been enjoined. *Slaton v. Paris Adult Theatre I*, 228 Ga. 343, 347, 185 S.E. 2d 768, 770 (1971). The United States Supreme Court in a 5-4 decision essentially approved the Georgia civil injunction procedure. It remanded the case, however, for reconsideration by the Georgia Supreme Court in light of the new definitions of obscenity contained in *Miller v. California*, 413 U.S. 15 (1973), decided the same day. In approving the use of injunctive action, however, Chief Justice Burger, writing for the majority, was careful to note, 413 U.S. at 55:

> "Here, Georgia imposed no restraint on the exhibition of the films involved in this case until after a full adversary proceeding and a final judicial determination by the Georgia Supreme Court that the materials were constitutionally unprotected. Thus the standards of *Blount v Rizzi*, 400 US 410, 417, 27 L Ed 2d 498, 91 S Ct 423 (1971); *Teitel Film Corp. v Cusack*, 390 US 139, 141-142, 19 L Ed 2d 966, 88 S Ct 754 (1968); *Freedman v Maryland*, 380 US 51, 58-59, 13 L Ed 2d 649, 85 S Ct 734 (1965); and *Kingsley Books, Inc. v. Brown*, supra, at 443-445, 1 L Ed 2d 1469, were met. Cf. *United*

*States v Thirty-seven Photographs*, 402 US 363, 367-369, 28 L Ed 2d 822, 91 S Ct 1400 (1971) (opinion of White, J.)."

In *Kingsley Books, Inc. v. Brown*, 354 U.S. 436 (1957), the Court approved a New York procedure "authorizing the chief executive, or legal officer, of a municipality to invoke a 'limited injunctive remedy,' under closely defined procedural safeguards, against the sale and distribution of written and printed matter found after due trial to be obscene, and to obtain an order for the seizure, in default of surrender, of the condemned publications." *Id.* at 437. Justice Frankfurter, writing for the majority of five, again, was careful to point out that the procedure under consideration "studiously withholds restraint upon matters not already published and not yet found to be offensive." *Id.* at 445. On this basis he distinguished the procedures then before the Court from those which had been earlier condemned in *Near v. Minnesota*, 283 U.S. 697 (1931).

In *Near v. Minnesota*, the leading case on the constitutionality of injunctions against future expression, the Court had before it a Minnesota statute which provided in pertinent part as follows:

> "Section 1: Any person who . . . shall be engaged in the business of regularly . . . producing, publishing or circulating, having in possession, selling or giving away,
>
> (a) an obscene, lewd and lascivious newspaper, magazine, or other periodical, or
>
> (b) a malicious, scandalous and defamatory newspaper, magazine or other periodical,
>
> is guilty of a nuisance, and all persons guilty of such nuisance may be enjoined, as hereinafter provided." *Id.* at 702.

The statute further authorized the county attorney or any citizen to maintain an action for the injunction authorized by the statute. A proceeding for an injunction was brought in the Minnesota state courts against Near and other defendants. At trial it was found as a fact that the defendants had published various editions of a periodical known as "The Saturday Press" from 24 September 1927 to 19 November 1927 and that these editions were " 'chiefly devoted to malicious, scandalous and defamatory

articles.' " It was further found that the defendants " 'did engage in the business of regularly and customarily producing, publishing and circulating a malicious, scandalous and defamatory newspaper' " and that such publications constituted a public nuisance. The trial court thereupon enjoined the publication of "The Saturday Press" and perpetually enjoined defendants from publishing " 'any publication whatsoever which is a malicious, scandalous or defamatory newspaper, as defined by law.' " *Id.* at 706. The Supreme Court, with Chief Justice Hughes writing for a majority of five, concluded that the injunction was "the essence of censorship" and constituted the kind of prior restraint on expression that was violative of the freedoms of press and speech guaranteed by the First Amendment and made applicable to the states through the Due Process Clause of the Fourteenth Amendment. The Court said in meeting the arguments of the State of Minnesota:

> "Nor can it be said that the constitutional freedom from previous restraint is lost because charges are made of derelictions which constitute crimes.
>
> . . . .
>
> "Equally unavailing is the insistence that the statute is designed to prevent the circulation of scandal which tends to disturb the public peace and to provoke assaults and the commission of crime. Charges of reprehensible conduct, and in particular of official malfeasance, unquestionably create a public scandal, but the theory of the constitutional guaranty is that even a more serious public evil would be caused by authority to prevent publication." *Id.* at 720, 721-22.

Thus, the Court in *Near* made it clear that the truth or falsity of the charges contained in the particular periodicals under consideration was immaterial to the constitutional question of whether future publications could be enjoined.

Relying on *Near*, the Court in *Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971), struck down an Illinois state court injunction against " 'passing out pamphlets, leaflets or literature of any kind, and from picketing, anywhere in the city of Westchester, Illinois.' " The trial court found that the persons enjoined had, through the distributions of certain pamphlets, ac-

cused a real estate broker in Westchester, Illinois, of arousing fears of local white residents that Negroes were moving into the area and thereafter exploiting their reactions to bolster his real estate business. The trial court found that the pamphleteers' activities in Westchester had invaded the real estate agent's right of privacy and had caused irreparable harm and that he was without an adequate remedy at law. The Supreme Court in an opinion by Chief Justice Burger struck down the injunction saying:

> "It is elementary, of course, that in a case of this kind the courts do not concern themselves with the truth or validity of the publication. Under *Near v Minnesota*, 283 US 697, 75 L Ed 1357, 51 S Ct 625 (1931), the injunction, so far as it imposes prior restraint on speech and publication, constitutes an impermissible restraint on First Amendment rights. Here, as in that case, the injunction operates, not to redress alleged private wrongs, but to suppress, on the basis of previous publications, distribution of literature 'of any kind' in a city of 18,000." *Id.* at 418-19.

In *New York Times Co. v. United States*, 403 U.S. 713 (1971), the United States government sought to enjoin the *New York Times* and the *Washington Post* from publishing contents of a classified study entitled "History of U.S. Decision-Making Process on Viet Nam Policy" (the Pentagon papers). District courts for the Southern District of New York and the District of Columbia and the Court of Appeals for the District of Columbia Circuit had refused to issue an injunction against the newspapers. The Court of Appeals for the Second Circuit held, however, that the injunction should issue. The United States Supreme Court in a per curiam opinion concurred in by six justices concluded that the injunction should not issue notwithstanding that in the opinions of the various concurring justices the Pentagon papers, if published, would have "serious impact" on the national security, would "do substantial damage to public interest" and might even constitute a violation of federal criminal law. This case is significant in the area of the permissible limits of restraint on expression in that the very materials sought to be restrained were before the Supreme Court for review. Here, by contrast, the restraint is against materials yet to be seen or even published.

Andrews v. Chateau X

Any restraint against future expression, the Supreme Court has repeatedly said, comes " 'bearing a heavy presumption against its constitutional validity.' " *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558 (1975), and cases there cited. The reason is that there often is a finely drawn line between protected speech under the First Amendment and that which is not so protected. This is particularly true in the area of obscenity. There are, of course, many items which are clearly on one side or the other of that line. Defendants here concede that all items now before the courts are obscene. Under the statute they can be seized and destroyed. There is no contest in this case as to them. On the other hand there are many forms of expression upon which reasonable persons differ regarding whether they are obscene, or lewd, within the statutory definition of those terms. Examples abound in our literature, cinematic and otherwise.[1] One is found in *Yeager v. Neal*, 26 N.C. App. 741, 217 S.E. 2d 576 (1975). That case concerned the film, "Memories Within Miss Aggie" which the state sought to have declared obscene as that term was defined in a criminal statute, G.S. 14-190.1.[2] At the adversary hearing required by G.S. 14-190.2, over which I, as trial judge

---

1. Masturbation, homosexuality and sadism are depicted in a recently released film, "Midnight Express," which has nevertheless been critically acclaimed and could hardly be said to lack serious literary, artistic and educational value. *See Newsweek*, 16 October 1978, at 76, 81; *Time*, 16 October 1978, at 111-12; *Vogue*, September 1978, at 62.

Sodomy per anum was graphically depicted in the critically acclaimed film, "Last Tango in Paris." *See Newsweek*, 12 February 1973, at 54-58.

The works of Henry Miller, *Tropic of Capricorn* and *Tropic of Cancer*, were once widely considered obscene, but are now highly regarded as literary pieces. *See* Gordon, *The Mind and Art of Henry Miller* (1967). The same can be said of D. H. Lawrence's *Lady Chatterly's Lover*. *See* Sanders, *D. H. Lawrence: The World of the Five Major Novels*, at 172-205 (1973). *See generally* Rembar, *The End of Obscenity* (1968).

2. The applicable parts of the statute are as follows:

"(b) For purposes of this Article any material is obscene if:

(1) The material depicts or describes in a patently offensive way sexual conduct specifically defined by subsection (c) of this section; and

(2) The average person applying contemporary statewide community standards relating to the depiction or representation of sexual matters would find that the material taken as a whole appeals to the prurient interest in sex; and

(3) The material lacks serious literary, artistic, political, educational or scientific value; and

(4) The material as used is not protected or privileged under the Constitution of the United States or the Constitution of North Carolina.

(c) Sexual conduct shall be defined as:

(1) Patently offensive representations or descriptions of actual sexual intercourse, normal or perverted, anal or oral;

(2) Patently offensive representations or descriptions of excretion in the context of sexual activity or a lewd exhibition of uncovered genitals, in the context of masturbation or other sexual activity."

presided, the film was shown and various witnesses testified about it. All of the witnesses by reason of training and background possessed some expertise in the field of literary criticism. All felt that the film was clearly a serious literary and artistic work. There was *no* testimony to the contrary. Finding on the evidence presented including the film itself that the film did have serious literary and artistic value, I determined that it could not be declared obscene. The Court of Appeals affirmed on the basis of this finding which was not excepted to by the state although according to a vigorous dissent by Brock, C.J., a member of the panel who also viewed it, they all agreed that "the film depicts in a patently offensive way portrayals of actual sexual intercourse, normal and perverted, anal and oral, and a lewd exhibition of uncovered genitals in the context of masturbation." *Id.* at 745.

The difficulty of defining obscenity in the abstract has long been anathema to legislatures and courts. Some judges have conceded that efforts to do so must ultimately fail.[3] Other judges, however, assert that they know obscenity when they see it.[4] If this is so, then a corollary must be that judges cannot know it *until* they see it. Even if obscenity can be defined in the abstract, it cannot be so enjoined in keeping with the First Amendment. To be dealt with judicially it must first be judicially seen.

---

3. *Miller v. California, supra,* 413 U.S. 15, 37 (Douglas, J., dissenting); *Paris Adult Theatre I v. Slaton, supra,* 413 U.S. 49, 73 (Brennan, J., dissenting); *see also Smith v. United States,* 431 U.S. 291, 311 (1977) (Stevens, J., dissenting in a federal criminal obscenity prosecution, sustained by the majority, on the ground that "the line between communications which 'offend' and those which do not is too blurred to identify criminal conduct." *Id.* at 316.) The majority opinion, I fear, does not fully represent Justice Stevens' position in this area. He said, *id.* at 318-21:

"It seems to me ridiculous to assume that no regulation of the *display of sexually oriented material* is permissible unless the same regulation could be applied to political comment. On the other hand, I am not prepared to rely on either the average citizen's understanding of an amorphous community standard or on my fellow judges' appraisal of what has serious artistic merit as a basis for deciding what *one citizen may communicate to another by appropriate means.*

"I do not know whether the ugly pictures in this record have any beneficial value. The fact that there is a large demand for comparable materials indicates that they do provide amusement or information, or at least satisfy the curiosity of interested persons. Moreover, there are serious well-intentioned people who are persuaded that they serve a worthwhile purpose. Others believe they arouse passions that lead to the commission of crimes; if that be true, surely there is a mountain of material just within the protected zone that is equally capable of motivating comparable conduct. Moreover, the dire predictions about the baneful effects of these materials are disturbingly reminiscent of arguments formerly made about the availability of what are now valued as works of art. In the end, I believe we must rely on the capacity of the free marketplace of ideas to distinguish that which is useful or beautiful from that which is ugly or worthless." (Emphases supplied.)

4. "I have reached the conclusion, which I think is confirmed at least by negative implication in the Court's decisions since Roth and Alberts, that under the First and Fourteenth Amendments criminal laws in this area are constitutionally limited to hard-core pornography. I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it, and the motion picture involved in this case is not that." *Jacobellis v. Ohio,* 378 U.S. 184, 197 (1964) (Stewart, J., concurring.)

Thus the Supreme Court has consistently insisted that states in their efforts to regulate prohibited forms of expression adopt procedures which are sensitive to the constitutional mandate that protected expression be in no wise threatened:

> " '[T]he line between speech unconditionally guaranteed and speech which may legitimately be regulated, suppressed, or punished is finely drawn. . . . The separation of legitimate from illegitimate speech calls for . . . sensitive tools . . . .' *Speiser v Randall*, 357 US 513, 525, 2 L ed 2d 1460, 1472, 78 S Ct 1332. It follows that, under the Fourteenth Amendment, a State is not free to adopt whatever procedures it pleases for dealing with obscenity as here involved without regard to the possible consequences for constitutionally protected speech." *Marcus v. Property Search Warrant*, 367 U.S. 717, 731 (1961); *accord, Southeastern Promotions, Ltd. v. Conrad, supra*, 420 U.S. 546.

The majority relies on the proposition that an injunction against future expression which, by definition, will be violative of the law is no greater threat to protected speech than a statute which imposes criminal sanctions against one who engages in such expression. Since the United States Supreme Court has approved such criminal sanctions against obscenity, the majority contends, it ought to approve these kinds of injunctions. This argument is an old one. It was made and had to be faced in *Near v. Minnesota*. There the Supreme Court, recognizing that libel could be punished criminally, nevertheless struck down a civil injunction against it. The Court there said, 283 U.S. at 713-14:

> "The liberty deemed to be established was thus described by Blackstone: 'The liberty of the press is indeed essential to the nature of a free state; but this consists in laying no *previous* restraints upon publications, and not in freedom from censure for criminal matter when published. Every free man has an undoubted right to lay what sentiments he pleases before the public; to forbid this, is to destroy the freedom of the press; but if he publishes what is improper, mischievous or illegal, he must take the consequence of his own temerity.' 4 Bl. Com. 151, 152; *see* Storey on the Constitution, §§ 1884, 1889."

Andrews v. Chateau X

The Supreme Court rejected the argument then and has consistently rejected it since. The Court said in *Southeastern Promotions, Ltd. v. Conrad, supra,* 420 U.S. 546, 558-59:

> "The presumption against prior restraints is heavier — and the degree of protection broader — than that against limits on expression imposed by criminal penalties. Behind the distinction is a theory deeply etched in our law: a free society prefers to punish the few who abuse rights of speech *after* they break the law than to throttle them and all others beforehand. It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable."

The reason for this distinction is thus that in a free society restraints on expression not yet uttered are totally antithetical to any notion of free speech largely because of the then uncertainty of what might be said. Once the expression is made it is an accomplished fact upon which it is permissible for courts to act as in other criminal cases. If the expression be illegal those responsible can be held accountable. This notion inheres elsewhere in the law in the familiar doctrine of admittedly uneven application that equity will not enjoin a proposed criminal act on the ground that there is a complete remedy at law if the act is committed. *See Mills v. Cemetery Park Corp.,* 242 N.C. 20, 86 S.E. 2d 893 (1955); *Dare County v. Mater,* 235 N.C. 179, 69 S.E. 2d 244 (1952).

Another distinction is that in a criminal action various procedural safeguards are present, for example, entitlement to a jury trial. Alleged violations of the kind of injunction issued in this case may be tried and punished by the presiding judge.[5]

Furthermore it is well to note again that in North Carolina one may not be criminally prosecuted for dealing in obscene materials unless he deals in material which has first been judicially declared to be obscene in an adversary hearing conducted prior to the criminal prosecution. G.S. 14-190.2. There seems to be no

---

5. G.S. 19-4 provides:

"*Violation of injunction; punishment.*—In case of the violation of any injunction granted under the provisions of this Chapter, the court, or, in vacation, a judge thereof, may summarily try and punish the offender. A party found guilty of contempt under the provisions of this section shall be punished by a fine of not less than two hundred ($200.00) or more than one thousand dollars ($1,000), or by imprisonment in the county jail not less than three or more than six months, or by both fine and imprisonment."

constitutional requirement for such an adversary proceeding prior to criminal prosecution, *Miller v. California, supra,* 413 U.S. 15, but our General Assembly has deemed it appropriate to provide such protection.

The construction which I feel should be given this legislation does not render the state powerless to deal with the problem of obscenity. The legislature could, if it thinks such action necessary, amend its criminal statutes, G.S. 14-190.1, et seq., so as to eliminate the requirement of an adversary hearing prior to criminal prosecution or provide penalties for the violation thereof which would serve to deter violators. Even under the civil nuisance proceeding as I would interpret it, the remedies against dissemination of obscene material are formidable. Once such materials are located an ex parte judicial order may issue forthwith placing substantial limitations on trafficking in the material. G.S. 19-2.3. If, thereafter, the material is judicially determined or admitted to be obscene it can be confiscated and destroyed. G.S. 19-5. All monies paid in consideration for the sale of obscene material after the ex parte order has issued must be accounted for, and if these monies are thereafter determined to have been paid in consideration of obscene material they may be forfeited to the local government. G.S. 19-6. Even if a defendant, determined to violate these statutes, replenishes his stock with items different from those previously confiscated under prior orders, it would seem that only a few successive confiscations of his stock in a campaign of zealous law enforcement would render his unsavory business so unprofitable that he would have to quit.

For the reasons stated I vote to vacate so much of the trial court's order as seeks to enjoin defendants from dealing in items not yet published or possessed by them.